No. 16.—BOSTON & GUNBY, plaintiffs in error, *vs.* VALINDA. CUMMINS, claimant, defendant.

[1.] Acts of the Legislature are not only presumed to be constitutional, but the authority of the Court to declare them void, will. never be resorted to, except in a clear and urgent case.

[2.] *Ex post facto* Laws defined ; they extend to *criminal* and not to *civil* cases.

[3.] A law may be *ex post facto*, and still not. obnoxious. to the inhibition in the Constitution.

[4.] Retrospective Laws often operate for the. benefit of society, and to repudiate them altogether, would be to obliterate a large portion of the Statute Law of the State.

[5.] Registry Acts may be passed, requiring deeds already executed to be recorded within a limited time ; and if the older grantee fail to comply with. the Law, he will be postponed to a junior grantee, who brings himself within the Statute.

[6.] The policy pervading our Registry Acts, has. existed since 1755.

[7.] Our Law makes no distinction between conflicting conveyances under the Registry Acts, and contests between grantees. and judgment creditors.

[8.] Until the 33d of *George III,* it was the settled rule in the Courts of Great. Britain, that an Act of Parliament, which was to take effect from and after. the passing of it, should operate from the first. date of the session.

[9.] There are numerous Acts passed ten months ago by our own Legislature, operating upon the persons and property of individuals, and imposing pains and penalties for acts done or omitted in contravention of them, which have not yet been duly promulgated.

[10.] The Act of 1847, requiring marriage settlements, already made, to be recorded within twelve months. after its passage and publication,. and those executed afterwards, within three months from. their. date, makes no exceptions in favor of *feme coverts ;* and. consequently, the. Courts. can make none..

[11.] It is exceptions engrafted on Statutes, by the Courts, that give rise to the uncertainty of the Law.

[12.] The Act of 1847 is framed with technical skill and accuracy, and is not.

only a reasonable but a liberal Law; and one which ought to be enforced in good faith.

[13.] Where the husband acts as trustee *de facto* of the wife, he must discharge all his duties as such; and failing to do so, the consequences will be visited upon the *cestui que trust.*

[14.] Where a *feme covert* possesses and enjoys all the rights and powers of a *feme sole,* over her separate estate, she must perform the corresponding obligations of one.

[15.] The policy of our Registry Laws existed under the Colonial and Provincial Governments; and in framing our State and Federal Constitutions, their fundamental principles entered, as it were, by tacit consent, into the structure of American Commonwealths; and hence, the uniformity and universality of the doctrine, as it regards our Registry Acts, as expounded by all the Courts of this country.

[16.] The Parliament of Great Britain were in the habit of passing bills of attainder and of pains and penalties, after the fact to which they related. And to prevent these abuses, the prohibition against *ex post facto* Laws, was introduced into all of our American Constitutions.

[17.] But neither by the Civil Law, from which most of the Continental systems were borrowed, nor the English Law, upon which ours is founded, is retroactive legislation forbidden.

[18.] It is a matter of discretion with the Legislature, under the restrictions of the fundamental compact, how far it may be expedient to enact laws of this description.

[19.] The General Assembly of Georgia, acting within the pale of the Constitutions of the United States and of this State, has the same omnipotence ascribed to the British Parliament.

Claim, in Spalding Superior Court. Tried before Judge STARKE, May Term, 1854.

This was a case, in which certain *fi. fas.* in favor of Boston & Gunby, against Francis D. Cummins, had been levied on certain negro property, as the property of Cummins; to which a claim was interposed by said Cummins, as trustee for his wife, Valinda Cummins.

The plaintiffs introduced their *fi. fas.*, proved the levies, and that the property was in possession of defendant.

Claimant introduced a marriage settlement, executed in 1833, between F. D. Cummins, of the one part, Valinda Davis, afterwards Cummins, and Martha Davis, trustee, of the other

parts, by which certain property (proven to include the property now in question) was conveyed to the said Martha Davis, in trust, for the sole and separate use of the said Valinda, then about to be married to Francis D. Cummins.

This instrument was not recorded until June 26, 1852. The *fi. fas.* levied were on judgments obtained at November Term, 1852, on debts contracted in 1851. It was objected, on the part of the plaintiffs, that this conveyance was void, as against creditors, without notice, by the Act of 30th December, 1847, which provides that all marriage settlements, before that time executed, where the husband resides within the State, should be recorded within twelve months after the passage of the Act, or else be void, as against *bona fide* creditors, securities or purchasers, without notice.

The Court decided that this Act, in its application to past contracts, is unconstitutional and void; and this decision is alleged as error.

An exception was also filed by the plaintiff, to the refusal of the Court to admit, as testimony, the following extract from a letter of the defendant, F. D. Cummins, to them, dated February 16th, 1851, which was as follows: My property, at present prices, is worth $5000, and there is not the scrape of a pen, in any Court, high or low, against me. I have concluded not to buy any more cotton, the market at home and abroad being so unsettled and uncertain. I rest confident you will do the best you can for me. The Jury having found the property not subject, the plaintiffs in *fi. fa.* excepted to said rulings of the Court.

ALFORD & MOORE; WARNER, for plaintiffs in error.

GREEN; McKINLEY, for defendant.

*By the Court.*—LUMPKIN J. delivering the opinion.

The Legislature, in 1847, passed an Act to require marriage settlements to be recorded.

Section I. enacts, " That all marriage agreements or settlements, *heretofore executed,* either within this or any other State

or Territory, where the husband resides within the limits of this State, shall be recorded within twelve months after the passage and publication of this Act, in the Clerk's office of the Superior Court, in the County of the residence of the husband".

Section II. "All marriage agreements or settlements, hereafter, made either in this State or any other State or Territory, where the husband resides in this State, shall be recorded within three months from the execution thereof, in the Clerk's office of the Superior Court of the County of the husband's residence".

Section III. "If any such instrument be not recorded within the time prescribed by this Act, the same shall not be of any force or effect, against a *bona fide* purchaser, without notice, *or bona fide creditor, without notice*, or *bona fide* surety, without notice, who may purchase *or give credit*, or become surety, before the actual recording of the same". (*Cobb's Digest*, 180.)

Is this Act unconstitutional, as applicable to marriage settlements, executed before its passage?

[1.] I need not repeat, here, what has often been declared before by this Court, viz: that Acts of the Legislature are not only presumed to be constitutional, but that the authority of the Courts to declare them void, will never be resorted to, except in a clear and urgent case—one which is directly in the teeth of the Constitution—as if the Legislature were to vest the Executive power in a Standing Committee of the House of Representatives; one which requires no nice critical acumen to decide on its character, but which is as obvious to the comprehension of any person as an axiomatic truth; as, that all the parts are equal to the whole, or that two and two make four.

A judgment of the Court, and even a Statute, may be vacated for fraud. (*Fermor's Case*, 3 *Coke*, 77.) Can it be questioned, that but for the Rescinding Act of 1796, the celebrated Yazoo Act of 1795 would have been declared null and void by the Courts?

xvi-14

If the Courts have the power to sit in judgment upon a solemn Act of the Legislature, passed according to the forms prescribed by the Constitution, because the Statute has been procured and perfected through the instrumentality of fraud, *a fortiori*, is the Judicial Department authorized to declare an Act unconstitutional?

Whenever this shall happen, from inadvertence or otherwise, it is manifestly the duty of every Court to protect the rights of the citizen from violation, and to vindicate the Constitution. The unconstitutional Acts of the Legislature, State or Federal, *are not laws;* and no Court will execute them, having a proper sense of its own obligations and responsibilities.

If the Act in question, then, impairs the force of contracts, or confiscates private property, or disturbs any vested rights, we ought not to give it effect. But is this its character?

[2.] The distinction between *ex post facto Laws,* and *retrospective Laws,* is well understood, and has long been acted upon by the Courts of this country. Every *ex post facto* Law must, necessarily, be *retrospective;* but every *retrospective* Law is not an *ex post facto* Law. The phrase, *ex post facto,* in the Constitution, extends to *criminal* and not to *civil* cases. And under this head, is included—1st. Every law that makes an action, done before the passing of the law, and which was *innocent,* when done, criminal, and punishes such action. 2d. Every law that *aggravates* a *crime* or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment,* and inflicts *a greater punishment* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less or different testimony than the law required, at the time of the commission of the offence, *in order to convict the offender.* All these, and similar laws, are prohibited by the Constitution.

[3.] It is conceded that a law may be *ex post facto* even, and still not amenable to this constitutional inhibition; that is, provided it mollifies, instead of aggravating the rigor of the Criminal Law.

Boston & Gunby *vs.* Cummins, claimant.

Mr. Justice *Paterson*, who was a member of the Convention that framed the Constitution of the United States, in *Calder and Wife vs. Bell and Wife*, says that he had an ardent desire to have extended the *ex post facto* provision in the Constitution, to *retrospective* laws, in general. He considered that there was neither policy nor safety in such laws, and that they neither accorded with sound legislation, nor the fundamental principles of the Social Compact. And Judge *Chase*, in the same case, remarked, that it was a good general rule, that a law should have no *retrospect*.

[4.] And while I concur with these eminent men, that every retrospective law which seeks to take away or interfere with vested rights, may be unjust and oppressive; still, I hold that there are numerous cases where retrospective laws operate for the benefit of the community. To repudiate them altogether, would be to obliterate a large portion of the Statute Law of this State.

The General Assembly of Georgia have passed Limitation Acts, requiring existing judgments to be enforced within a specified period; they have abolished joint-tenancies; and the Act for this purpose has been construed to apply to estates, where the execution of the deed creating them, was prior to its passage. They have altered the law respecting divorces, and it has been held to extend to cases prosecuted after its enactment, although the facts upon which the divorce should be obtained, were committed before. They have passed laws giving remedies, by attachment and garnishment, against existing corporations: indeed, our Digest abounds with *retrospective* Statutes, relating to these artificial bodies; requiring them to make periodical returns—imposing certain penalties, should they refuse to redeem their notes in specie, when demanded, &c.; priority of payment has been given to *cestui que trusts*, in certain cases of insolvency, whether the trust debt was contracted before or after those due to other creditors; thereby, it would seem, infringing the strict rights of the postponed classes. The Statutes exempting certain articles of property belonging to the debtor, from levy and sale, belong to this same

class. These and innumerable other instances might be adduced, to show the sense of our own people upon this subject, namely: that laws which were, in form and in fact, *retrospective*, have been either adjudged to be constitutional by the Courts, or uniformly acquiesced in; and thus, may be considered as having received the public sanction.

[5.] It is admitted, in the argument, and held as settled law, in all the Courts of this country, both State and National, that Registry Acts may be passed, requiring conveyances, already made, to be recorded within a reasonable time; and that an older grantee, failing to perform this duty, will be postponed to a junior grantee, who brings himself within the Statute.

[6.] Such has been the settled policy of this State, from 1755 to the present period, as the numerous Acts passed within that time will demonstrate. (See *Cobb's Digest*, 159, 162, 171 *and* 175.)

It is insisted, however, that the principle of this species of legislation, does not apply to a marriage settlement; and that should the Act of 1847 be enforced, in this case, it would not only impair, but utterly subvert the obligations of this contract. That the practical effect would be, to divest the trustee of the legal title to the negroes embraced in the settlement, and to revest the same in the wife; and by virtue of the marital rights, in the husband, the defendant; and that, too, in the face of his own stipulation in the deed, to which he was a party, that this property should, in no event, be subject to his contracts.

[7.] Let us examine into the operation of these Registry Acts. A conveys a tract of land to B. At the date of the deed, there is no Act requiring the conveyance to be recorded. Ten years afterwards, a law is passed, requiring all deeds to land, already made, to be recorded within twelve months from the passage and publication of the Statute; and that B, failing to do so, C holding a junior deed from A to the same land, recorded within the time prescribed by the Act, shall have preference over B. Is not the effect of this Act to divest B

Boston & Gunby *vs.* Cummins, claimant.

of his title, to revest it in A, notwithstanding he absolutely parted with all right in the same to B, before selling to C, and then through A, to transfer the estate to C?

The parallel is complete, with this difference: In the one case, A parts, forever, with all the interest which he had or held in the property: whereas, in the other, the settler only divests herself of the legal title, reserving the entire use to herself, to be shared and enjoyed with the husband. The case under the Registry Acts, is more objectionable, and much more questionable, as to its constitutionality, than the one under consideration.

By the 4th section of the Act of 1827, it is provided, that "upon failure to record any mortgage, as hereinbefore required, within the time prescribed, that in such case, all judgments obtained before the foreclosure of the mortgage, and also any mortgage executed after the same, and duly recorded, shall take lien on the said mortgaged property, in preference to the older mortgage". (*Cobb's Digest,* 172.)

Thus, it will be perceived that the policy of our law makes no distinction between conflicting conveyances, under the Registry Acts, and contests between grantees and judgment creditors.

In the opinion of this Court then, the Act of 1847, as applicable to this marriage settlement, is constitutional and valid. Moreover, we believe it to be not only a reasonable, but a liberal Act. Had it declared all marriage settlements, executed before its passage, but not recorded, void, as against purchasers, creditors and securities, for one, I would have refused to enforce it. But this Act is no journeyman-work; it is drawn by a master-hand; it is a model Statute; it allows instruments of this kind, already executed, to be recorded within twelve months from its passage and publication; whereas, all settlements made since, must be registered within three months from their execution.

[8.] Let those who denounce, so vehemently, the rigor of this law, remember that not long ago, it was a settled rule in the Courts of Great Britain, that an Act of Parliament which

was to take effect, from and after the passing of it, should operate from the first day of the Session, let the Act have been passed on what day it might, during the Session. (1 *Plowden*, 79.  6 *Bro. P. C.* 553.)  This rule of construction was maintained by the Court of King's Bench, in the case of *Latless vs. Holmes*, to have been "so long settled that it could not be shaken".  (4. *D. & E.* 460) *;* and the Court refer to one case in which "the life of a person was affected" by the operation of it; and it could only be abrogated, as *Christian* observes, by Parliament.  (33 *George III. c.* 13.)  What becomes of the supposed absurdity and injustice of the Act of 1847, when compared with this instance of the doctrine of relation ?

[9.]  How many laws, civil and criminal, are now in full force in this State, and which every citizen is bound to observe and obey, at his peril, which have not been published and distributed in the usual form, among the people ?   In the case before us, the Statute was not allowed to operate, until twelve months after its publication; and yet, there are scores of Statutes passed by the last Legislature, operating upon the persons and property of individuals, and imposing pains and penalties for acts done or omitted in contravention of them, which have not yet been duly promulgated ?   If this objection, as to *retrospection*, obtains, then, indeed, is the whole legislation of the State, under the existing state of things, as to the publication of the laws, obnoxious to it ; and the Courts will have their hands full of business.

[10.]  But there are peculiar circumstances, it is contended, in this case, which should take it out of the operation of the Statute.   And although the Court declined to put its decision upon these special facts, still, if they will protect the title of Mrs. Cummins to this property, we will, with great pleasure, give to her the benefit of them.

The marriage settlement was executed in February, 1833. It was delivered to Miss Martha Davis, the trustee, who was in bad health at the time, and died in July, 1836.   Mrs. Anne Finley, another sister and a subscribing witness, took possession of the trunk of Miss Davis, containing, among other

Boston & Gunby *vs.* Cummins, claimant.

things, this document, and retained the possession of it until she married, when it was delivered to Mrs. Cummins. Now, the argument is, that Mrs. Cummins, being a *feme covert*, no *laches* can be attributable to her, so as to work a forfeiture of her rights.

First, we say, the Act, itself, makes no exception in favor of *feme coverts;* and consequently, we can make none.

[11.] All Courts, both in England and in this country, regret that any exceptions were ever engrafted, by the Bench, on the Statutes of Frauds and of Limitations; and, I will add, to any other Statute. This is that Pandora's Box from which has emanated that curse and reproach of the law—its uncertainty. Adhere to the plain language of the law, and all can comprehend its meaning, and will conform their conduct and contracts to it. Lawyers will then know how to advise their clients; because, they can understand the law as it is written in the Statute Book, while they cannot foresee or foretell what it will be made by Judicial Legislation.

[12.] Being called on, then, to put a construction, for the first time, on the Act of 1847, which is framed with technical skill and accuracy, and the object of which we cordially approve, we shall be careful not to expose ourselves to the reproach of our successors, by doing the very thing we condemn in our predecessors, namely: create exceptions where the law makes none. *All* marriage settlements *must* be recorded within the time prescribed, or the consequences *must* follow.

If we make this exception, we establish the principle, that whenever the elder grantee or the trustee, in the case of marriage settlements, dies within the Statutory limit for recording the instrument, the law does not apply. And this rule must extend to instruments executed since, as well as before the Act; for as to the doctrine which is claimed, it can make no difference. And yet, did any body ever know of an application to a Court, either of Law or Equity, for relief, against the law, upon any such ground? It is a new reason for relief against the unbending severity of our Registry Acts.

[13.] But again: the record shows that Major Cummins,

the defendant, managed and controlled this property, acting, as he was entitled to do, by law, as the agent or trustee, *de facto*, of his wife. The duty devolved on him to see to the registration of this settlement. At the time it was executed, he, himself, suggested that it should be placed in the hands of the Clerk, to be recorded. True, it may not have been necessary to do this, at the time, as the law then stood; still, it shows that his attention, as well as that of the other parties to the contract, was called, even at that early day, to the subject.

[14.] But there is this further answer to the position, under which the defendant in error seeks to excuse herself from a compliance with the law. By the terms of this deed, Mrs. Cummins reserves to herself the absolute power and control over the property, in as full and ample a manner as though she were a *feme sole*. She is a *feme sole*, as to this property, to all intents and purposes. And while she enjoys the rights, she must perform the corresponding obligations of one. If the penalty of postponement would be visited on every other single woman, and perhaps even on infants of tender years, under our Registry Acts, she cannot be exempted. This view of the question is, to my mind, conclusive.

[15.] The learned Counsel for the defendant in error, who has argued this case with so much ability, suggests that the peculiar policy of our Registry Acts, existed under the Colonial and Provincial Governments, which were, themselves, in this and many other respects, founded upon the Common and Statute Laws of England; and that in framing our State and Federal Constitutions, these fundamental principles entered, as it were, by tacit consent, into the structure of American Commonwealths. And hence, the uniformity and universality of the doctrine, as administered by all the Courts of this country, as it regards our Registry Acts.

Without stopping to inquire whether marriage settlements, as well as all other conveyances, both of real and personal property, do not legitimately fall within this class of legislation, allow me to say, that the very same reason operates, and with double force, in behalf of *retroactive legislation*.

[16.] The Parliament of Great Britain were in the habits of passing bills of attainder, or bills of pains and penalties; they declared acts to be treason, which were not so at the time they were committed; they violated the rules of evidence, to supply a deficiency of legal proof; they authorized evidence to be received without *oath ;* they admitted the wife to testify against the husband; they inflicted punishments where the law prescribed none; and greater punishment than the law annexed to the offence.    To prevent these abuses, the prohibition against making *ex post facto* Laws, was introduced into all of our Constitutions.

[17.] But neither in the Civil Law, which is the basis of the different Codes, to a greater or less extent, of all Continental communities, nor by the English law, from which our system was more directly borrowed, and which is, itself, much more indebted to the Civil Law than the Jurists of that country have ever been willing to acknowledge, has the right to pass retrospective acts ever been doubted.

[18.] And it is a matter of discretion, pretty much, for the Legislature, (under the restrictions of the fundamental compact,) how far it may be expedient to enact laws of this description.

[19.] For myself, I have always supposed that our General Assembly, when acting within the pale of the Constitutions of the United States, and of this State, has the same omnipotence ascribed to the British Parliament.    " It has sovereign and uncontrollable authority in the making, confirming, restraining, abrogating, repealing, reviving and expounding of laws, (*Braddee vs. Brownfield,* 2 *Watts & Sergeant's R.* 271,) concerning all matters, of all possible denominations".    (1 *Bl. Com.* 160.)

While I concede to the Legislature even the power of *expounding* laws, let it be borne in mind that it is with the limitation which I have stated ; that it is not the power which belongs to the Parliament of Great Britain, in this respect, but the power which belongs to an *American* State, where the three Departments of the Government are distinct and sepa-

xvi–15

rate, and each restrained within marked and settled boundaries.

Holding, then, as we do, that this Act is in furtherance of justice, and that the Legislature cannot be charged with violating its duty or exceeding its authority, in its passage, we are constrained to reverse the judgment of the Court below, in pronouncing it unconstitutional and void, as applicable to this marriage settlement.

Unless, then, notice can be brought home to these judgment creditors, they must succeed. In other words, in the absence of notice, this marriage settlement does not stand in their way, under the Act of 1847.

As to the rejection of the letter, we think the Court ruled right. The representations of the defendant were inadmissible, to prejudice the rights of the claimant.