18293. PHILLIPS *et al.* v. CITY OF ATLANTA *et al.*

Argued July 14, 1953—Decided September 15, 1953—Rehearing denied September 28, 1953.

74

*Phillips, Johnson & Williams,* for plaintiffs in error.

*Aaron Kravitch, William Searcy, Myrick & Myrick, Chas L. Gowen,* for party at interest not party to record.

*J. C. Savage, J. C. Murphy, J. M. B. Bloodworth, John E. Feagin, Henry L. Bowden,* contra.

DUCKWORTH, Chief Justice. "The legislative power of the State shall be vested in a General Assembly which shall consist of a Senate and House of Representatives." Code (Ann.), § 2-1301. This court has repeatedly held that the quoted clause of the Constitution renders void any attempt to delegate legislative powers. *Georgia R.* v. *Smith,* 70 *Ga.* 694; *Southern Ry. Co.* v. *Melton,* 133 *Ga.* 277 (65 S. E. 665); *Early County* v. *Baker County,* 137 *Ga.* 126 (72 S. E. 905); *Richter* v. *Chatham County,* 146 *Ga.* 218 (91 S. E. 35); *Moseley* v. *Garrett,* 182 *Ga.* 810 (187 S. E. 20); *Long* v. *State,* 202 *Ga.* 235 (42 S. E. 2d 729). It was pointed out in the case last cited that this court has held two types of legislation not repugnant to the Constitution: the first of such types being in cases where, after a legislative enactment has plainly set forth the purpose of the legislation and marked its limits, it then provided that designated administrative officers should have power to promulgate rules within the scope of the legislation, designed to fully administer and give effect to that law; and second, legislation to which a referendum is attached which provided that it would become a law only after having received a favorable vote of the people to be affected. In *Richter* v. *Chatham County,* 146 *Ga.* 218, supra, this court was dealing with an enactment by the legislature which sought to confer upon the county officers of Chatham County undefined and unrestricted power to establish a system of registration. At page 220 thereof it is said, "The General Assembly in the act in question made

no effort to legislate anything in regard to the system of registration proposed for Chatham County. It simply authorized the county officers to establish a system of registration. This was a grant of legislative authority, and is repugnant to the Constitution (art. III, sec. I, par. I), which vests the legislative power of the State in the General Assembly."

Counsel have cited in their briefs *Bennett* v. *City of Baxley,* 149 *Ga.* 275 (99 S. E. 864). There this court was evenly divided on the question of whether or not the legislature could delegate to a municipality the power to extend its corporate limits, Chief Justice Fish, Presiding Justice Beck, and Associate Justice Hill being of the opinion that the legislature could not constitutionally delegate such power, while Justices Atkinson, Gilbert, and George were of the contrary opinion. We wish at this time to put at rest any doubts resulting from that case. Obviously, incorporating additional territory in a municipality was legislative in character and in fact, and the Constitution clearly prohibited the exercise of legislative powers by other than the General Assembly. The act there was, for this reason, unconstitutional and this court should have so held.

Counsel also cite *White* v. *City of Atlanta,* 134 *Ga.* 532 (5) (68 S. E. 103), but the ruling is simply that, as we have pointed out above, it is permissible for the legislature to attach a referendum to its enactment and provide that it shall become effective only after receiving a favorable vote in the referendum. Such is not a delegation of legislative power, but is simply an exercise of that power, guided by the will of the people to be affected.

What is said above would seem to demonstrate conclusively that, as the Constitution stood before it contained art. XV, sec. I, par. I (Code, Ann., § 2-8301), all legislative power reposed in the General Assembly, and this power could not be constitutionally delegated by the General Assembly. But the legislation here drawn in question (Ga. L. 1951, p. 116, as amended by Ga. L. 1952, p. 46.) is expressly claimed to have constitutional basis in art. XV, sec. I, par. I. It plainly undertakes to delegate to cities the power to legislate extensions of corporate limits by the procedure of initiative and referendum. The article of the Constitution relied upon unquestionably authorizes the General Assembly to delegate legislative powers to munici-

palities by embodying initiative, referendum, and recall in some of the systems of government which that article directs the legislature to provide. It is as follows: "The General Assembly shall provide for uniform systems of county and municipal government and provide for optional plans of both, and shall provide for systems of initiative, referendum and recall in some of the plans for both county and municipal governments. The General Assembly shall provide a method by which a county or municipality may select one of the optional uniform systems or plans or reject any or all proposed systems or plans." If taken literally, the quoted clause would be self-contradictory, and no valid law could be enacted thereunder because it requires first that the systems of government must be uniform, then contradicts this by requiring that they be multiple and optional. But we think such literal reading is inadmissible because the context in which the word "uniform" is used shows that it was not intended to have such literal meaning. The entire paragraph shows unmistakably an intent that (1) legislation be enacted containing a number of comprehensive and complete systems of county and municipal governments, differing in some particulars; and (2) some of which to contain powers of initiative, referendum and recall; and (3) procedures for the ascertainment of the will of the people, accepting one or rejecting all of such systems or plans provided for by the General Assembly. It is apparent, therefore, that what is meant by "uniform" is general, standard, model enactments of the General Assembly, and that each must be the same throughout the State, so that each municipality or county selecting a particular system should have a system identical with every other county or city that selects that plan. No doubt the word "uniform" was used to underline and emphasize the intent that municipalities continue as they had theretofore to depend solely and completely upon the General Assembly for all their powers and systems of government. This would be the natural and logical intent, since municipal governments are creatures of the legislature. It was thus provided in order to refute any notion that municipalities had the green light to write their own tickets and assume such powers as they might choose to exercise. Such would not be orderly government, it would be a multiplicity of local laws and regulations that would ultimately

destroy commerce and communication as well as individual liberty.

The demonstrated wisdom of our American system of representative government and public laws enacted by representatives freely chosen is enough to demand extreme caution and critical examination of any proposed departure therefrom. History warns us of tragedies endured by the individual under practically every other system.

From what has been said it follows that the only procedure by which power to legislate—and this includes extending corporate limits of municipalities—can be delegated by the General Assembly under art. XV, sec. I, par. I is by incorporating such delegated power in systems of government enacted by the General Assembly. Systems of government and municipal charters are synonymous. Each confers and defines powers and provides for machinery to operate the government. It is argued by counsel that the Home Rule Act here involved constitutes systems of government in conformity with the Constitution, since under it the municipalities may elect to have initiative, referendum, and recall government or retain their present charters. The plain terms of the Constitution refute this contention. It demands that systems and not a system be provided by the legislature. It directs that municipalities be allowed to select a system provided or reject all of them. Where would a municipality stand when it rejected its only charter?

Since any right claimed by the petitioners is dependent upon a holding that section 3(j) of the Home Rule Act, purporting to confer power upon a municipality to legislate by extending its boundaries, is valid, and since as ruled above it is unconstitutional and void, the petition alleges no cause of action, and the court did not err in holding the act void and in dismissing the petition.

*Judgment affirmed. All the Justices concur, except Head, J., who concurs specially, and Atkinson, P.J., not participating.*