## 34489. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY et al. v. WALLACE et al.

MARSHALL, Justice.

Eugene Wallace and S. M. Curtin, d/b/a C & W Hauling Co. (C & W), brought suit in Fulton Superior Court against Metropolitan Atlanta Rapid Transit Authority (MARTA); John Cole, MARTA's Assistant to the General Manager for Equal Employment

Opportunity; Horn/Fruin-Colnon (Horn), prime contractor on MARTA Contract CN-120; UMC (Underground), first-tier subcontractor on MARTA Contract CN-120; and others. C & W is a second-tier subcontractor on MARTA Contract CN-120, performing earth-hauling and removal services.

Under Executive Order 11625 and Title VI of the Civil Rights Act of 1964 (42 USCA § 2000d et seq.), the United States Department of Transportation (DOT), which is the federal funding agency for MARTA, requires, as a condition precedent to MARTA's receipt of federal funds, that a certain number of "Minority Business Enterprises" (MBE's) be utilized as contractors on MARTA construction projects.[1]

In July of 1978, Cole informed Horn and Underground that C & W did not qualify as an "MBE." C & W then filed this suit, alleging that because MARTA had refused to approve C & W as an "MBE," Horn and Underground intended to remove C & W as a second-tier subcontractor on MARTA Contract CN-120. Following a hearing, the trial court issued an interlocutory injunction restraining the defendants, including MARTA and Cole, from causing the dismissal or termination of C & W as a subcontractor on MARTA Contract CN-120. MARTA and Cole appeal.

At the outset, MARTA argues that its motion to dismiss should have been granted by the trial court on either of two procedural grounds: (1) lack of standing, and

---

[1]MBE is defined by federal regulations promulgated by DOT to mean "a business that is owned and controlled by one or more minority persons." "Minority person" is defined as an individual who is black, as well as individuals who are members of other minority groups. "Owned and controlled" is defined to mean "a business which is . . . a corporation or other entity controlled by minority persons, and in which at least 51% of the voting interests and 51% of the beneficial ownership interests legitimately are held by minority persons." Executive Order 11625 and MARTA Contract CN-120 bid documents contain their own definitions of MBE.

(2) failure to exhaust administrative remedies.

1. First, MARTA argues that since the plaintiffs are not parties to the grant agreement between MARTA and the federal government requiring utilization of MBE's, they lack standing to seek judicial enforcement of the terms of this agreement.

As the primary authority for this argument, MARTA cites *Miree v. United States,* 242 Ga. 126 (249 SE2d 573) (1978). In *Miree,* it was held that the plaintiffs, who were seeking to recover damages caused by a jet crash at the DeKalb-Peachtree Airport, could not maintain the action as third-party beneficiaries of a grant agreement between DeKalb County and the federal government. (It was alleged that maintenance of a garbage dump adjacent to the airport runway was in violation of this agreement and caused the crash.)

We are of the opinion that *Miree,* and the accompanying cases cited by MARTA, are inapposite. The plaintiffs in this case are not so much seeking to obtain relief as a third-party beneficiary of the grant agreement between MARTA and the federal government, as they are trying to prevent the allegedly wrongful termination of their subcontract with Horn and Underground because of the allegedly wrongful denial of their status as an MBE by MARTA. MARTA and Horn are in privity of contract, and since it is admittedly MARTA's action which has induced Horn to take action to terminate its subcontract with C & W, we hold that MARTA and Horn have been properly joined as codefendants in this suit. See Code Ann. § 81A-119 (a) (Ga. L. 1966, pp. 609, 630; 1972, pp. 689, 694).

2. Secondly, MARTA argues that its motion to dismiss should have been granted by the trial court on the ground that the plaintiffs have failed to exhaust their administrative remedies.[2]

In support of this argument, MARTA points out that it advised C & W in writing that adverse determinations as to its status as an MBE could be appealed to the

---

[2]Thus, MARTA is arguing that the plaintiffs have an administrative remedy but that they do not have a judicial remedy.

Director of Civil Rights, Compliance Division, Office of the Secretary of Transportation, Washington, D. C. However, as found by the trial court, DOT has not yet promulgated any regulations establishing a procedure through which a subcontractor, such as C & W, can appeal an adverse determination by an agency, such as MARTA, as to its status as an MBE. Thus, we find that the trial court did not err in refusing to dismiss the complaint on this ground.[3]

3. The procedural arguments in this case being thus disposed of, it becomes necessary to address the critical question which this case presents for decision: Did the trial court err in granting the plaintiffs' request for issuance of an interlocutory injunction?

The grant or denial of interlocutory injunctions rests in the sound discretion of the trial judge. Code § 55-108. However, the sole purpose for granting interlocutory injunctions is to preserve the status quo of the parties pending a final adjudication of the case. *Milton Frank Allen Publications v. Ga. Assn. of Petroleum Retailers,* 223 Ga. 784 (158 SE2d 248) (1967). "[A]n interlocutory hearing is designed to balance the conveniences of the parties pending a final outcome of the case. Stated another way, it has been held that the real consideration should be as to whether the greater harm would result by the granting or the refusal of the interlocutory relief. In other words, if the danger to one party is great, while the

---

[3]It would appear as though MARTA, as a public authority, would be excluded from the operation of the Georgia Administrative Procedure Act (Code Ch. 3A-1; Ga. L. 1964, pp. 338, 354) under Code Ann. § 3A-102(a). Note, however, that it has been held in *Wirt v. MARTA,* 139 Ga. App. 592 (229 SE2d 100) (1976), that MARTA is a "public entity" within the meaning of Section 11 of the Georgia Relocation Assistance and Land Acquisition Policy Act of 1973 (Ga. L. 1973, pp. 512, 519; Code Ann. § 99-3711). Thus, it was held in *Wirt* that determinations by MARTA of the amount of payments made under this Act may be appealed and judicially reviewed in the manner prescribed by the Georgia Administrative Procedure Act.

probable harm to the other is minimal, then relief ought to be granted or refused in line with such probabilities." 15 EGL 285, Injunctions, § 16 (1969). Accordingly, it has been held that " an interlocutory injunction should be refused where its grant would operate oppressively on the defendant's rights, especially in such a case that the denial of the temporary injunction would not work 'irreparable injury' to the plaintiff or leave the plaintiff 'practically remediless' in the event it 'should thereafter establish the truth of (its) contention.' *Burnham v. State Hwy. Dept.,* 224 Ga. 543, 549 (163 SE2d 698), quoting from *Everett v. Tabor,* 119 Ga. 128, 130 (146 SE 72)." *McKinnon v. Neugent,* 226 Ga. 331, 332 (174 SE2d 788) (1970).

4. MARTA avers that C & W would not be irreparably injured if the interlocutory injunction were refused. As argued by MARTA, the threatened loss of the profits that C & W would have made on its subcontract does not constitute "irreparable injury," since an adequate remedy at law exists for recovery of damages arising from such a breach of contract. We agree. See *Allsouth Sprinkler Co. v. Network Building Systems,* 238 Ga. 372 (233 SE2d 174) (1977).

5. MARTA, on the other hand, has shown that it could be irreparably injured by being forced to have C & W employed as the earth-hauling subcontractor on MARTA Contract CN-120, if its decision that C & W is not a bona fide "MBE" is upheld. As stated by MARTA in its brief, "Not only did plaintiffs totally fail to sustain their burden of proving 'irreparable injury,' but the countervailing harm which may result to defendant MARTA if it must suffer under this interlocutory injunction is irretrievable, irreparable and possibly crippling. MARTA Contract No. CN-120 specifically requires that the hauling work being performed by plaintiff C & W Hauling Company be done by a *bona fide* 'Minority Business Enterprise.' This commitment to the utilization of minority businesses is imposed upon defendant MARTA by the U. S. Department of Transportation through the Urban Mass Transportation Administration. Defendant MARTA then transfers this commitment to the prime contractor and the prime contractor, in turn, passes the requirement to

its subcontractors. If by injunction the court forces the utilization of plaintiff C & W Hauling Company to perform the hauling work on Contract CN-120, the injury and damage to all defendants, once the work is completed, is irretrievable and irreparable. Once the hauling work has been completed, a final determination on the merits that plaintiff C & W Hauling Company was *not* entitled to the status of 'Minority Business Enterprise' will mean that defendant MARTA has failed in its obligation to its federal funding agency, the prime contractor will have defaulted on its contract, and the subcontractor will have defaulted to the prime contractor. Once the work has been done, these consequences are irretrievable and po- tentially crippling to the extent that they impact upon future federal funds and contracts."

We conclude that the trial court abused its discretion in granting the interlocutory injunction.

*Judgment reversed. All the Justices concur.*

ARGUED FEBRUARY 20, 1979 — DECIDED APRIL 4, 1979 — REHEARING DENIED APRIL 17, 1979.

*Kutak, Rock & Huie, Terrence Lee Croft, John R. Lowery,* for appellants.

*D. W. Latimore, Jr., Charles S. Johnson, III, William H. Faulk, Jr.,* for appellees.