45899. MITCHELL v. WILKERSON.
46027. FOLDEN v. KENNEDY et al.
46028. ROWE v. KENNEDY et al.
46029. GARNER v. KENNEDY et al.
46051. NEELY v. PARKER et al.
46052. AMOS v. PARKER et al.
(372 SE2d 432)

CLARKE, Presiding Justice.

Each of these cases involves recall elections and in each case the officeholders attack the constitutionality of the recall statute. The trial court held the statute constitutional. We disagree and reverse.

In 1978, the Georgia Constitution was amended to authorize the General Assembly to provide by general law for the recall of public officials who hold elective office. The amendment also states, "The procedures, grounds, and all other matters relevant to such recall shall be provided for in such law." Ga. Const. 1983, Art. II, Sec. II, Par. IV. Acting pursuant to this authority, the General Assembly enacted a recall statute in 1979. OCGA § 21-4-1 et seq. The statute does not specify grounds for a recall election but provides that the application for a recall petition must include among other things,

> the specific reason or reasons advanced by the sponsors for the support of the recall. Such reason or reasons shall be limited to not more than six lines on the application and shall be typed, printed, or reproduced by the election superintendent on the face of each application issued. . . .

This constitutional attack on the statute presents a forthright question: whether the legislature must specify in the statute grounds for a recall or whether it is adequate to require the applicants for a recall petition to select and recite the grounds. We find the language of the constitutional provision to be plain upon its face. The Constitution says certain things shall be provided for by law. Among those things are the grounds for the recall. We view this as a mandate which the General Assembly may not escape. Funk & Wagnalls Standard Dictionary defines "ground" as "the fundamental cause, reason or motive for an action. . . ." The statute does not specify the fundamental reason or motive upon which a petition for recall can rest. Instead, it attempts to authorize the applicant for recall to designate and specify the reasons for a recall. We perceive no distinction between grounds and reasons. The basic expression of the people's will

occurs in the ratification of the Constitution. In constitutionally expressing their will, the people imposed upon the legislature a limitation of its right to enact a recall statute. That limitation is the requirement that grounds for the recall be stated in the act. The statutory attempt to transfer the selection of the reasons to the applicant amounts to an impermissible delegation of legislative authority. *Phillips v. City of Atlanta*, 210 Ga. 72 (77 SE2d 723) (1953). The absence of a specification of grounds in the statute causes the statute to fall short of that which is required of the General Assembly by the constitutional provision and results in a fatal infirmity. We hold that the statute violates Art. II, Sec. II, Par. IV of the Georgia Constitution of 1983.

Having held the statute unconstitutional, we do not reach the other issues in these cases.

*Judgments reversed. All the Justices concur, except Marshall, C. J., and Weltner, J., who dissent.*

WELTNER, Justice, dissenting.

1. Art. II, Sec. II, Par. IV of the Constitution of Georgia of 1983 provides as follows:

> The General Assembly is hereby authorized to provide by general law for the recall of public officials who hold elective office. The procedures, grounds, and all other matters relative to such recall shall be provided for in such law.

The term "recall" is defined in Funk & Wagnalls Standard Dictionary as follows: "A system whereby officials may be removed from office by popular vote." The constitution thus speaks, not of recall petitions, or recall elections, but of *recall* itself, that is, of *removal* from public office. We misread its plain language to intrude its requirement of grounds of "such recall" into the *procedures* (including those relating to recall petitions and recall elections) adopted by the General Assembly to assure a fair and orderly manner of recall.[1]

The "grounds" for "such recall" (i.e., the basis for removal from public office) as specified by the General Assembly, in accordance with the constitutional requirement, is the vote of a majority of electors in a recall election held upon the procedures prescribed by the Act.

2. "The people's right to seek recall of its public officers is a substantial right not to be impeded on frivolous ground. . . ." *Howell v.*

---

[1] Part of these *procedures* is the requirement of OCGA § 21-4-5 (b)(1)(D), that the "specific reason or reasons advanced by the sponsors for support of the recall" be set out in the recall petition.

*Tidwell,* 258 Ga. 246, 247 (368 SE2d 311) (1988).

3. The Constitution of Georgia of 1983, similarly with almost all of Georgia's constitutions, assures to the people of this state the unfettered right to regulate their internal government.

> All government, of right, originates with the people, is founded upon their will only, and is instituted solely for the good of the whole. Public officers are the trustees and servants of the people and are at all times amenable to them.

Art. I, Sec. II, Par. I.

> The people of this state have the inherent right of regulating their internal government. Government is instituted for the protection, security, and benefit of the people; and at all times they have the right to alter or reform the same whenever the public good may require it.

Art. I, Sec. II, Par. II.

4. In *Bartow County Bank v. Bd. of Tax Assessors,* 251 Ga. 831, 833 (312 SE2d 102) (1984), we held:

> It has long been the law in Georgia "that Acts of the Legislature are not only presumed to be constitutional, but that the authority of the Courts to declare them void, will never be resorted to, except in a clear and urgent case. . . ." *Boston & Gunby v. Cummins,* 16 Ga. 102, 105 (1854). Moreover, statutes are to be construed so as to be constitutional whenever possible. . . . This rule is related to the rule of construction that: "In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly. . . ." OCGA § 1-3-1 (a). . . . It follows that, because the General Assembly is presumed to intend all laws it enacts to be constitutional, the courts will choose a constitutional construction which realizes that intent.

Thus we are enjoined by long precedent to seek to uphold the constitutionality of acts of the General Assembly. And we are also enjoined to accord to remedial legislation a broad interpretation, sustaining whenever possible measures designed to remedy specified evils. This case concerns the right of the people to govern their own affairs, through public servants in whom they repose (and continue to repose) their confidence. Particularly in such a case should we follow these longstanding precepts of statutory interpretation.

5. Viewed in the light of these constitutional pronouncements,

and of the high purposes of the recall provision, I suggest that the Act is clearly constitutional. The General Assembly has met every constitutional requirement — *including* the statutory specification of "grounds, and all other matters relative to such recall."

I am authorized to state that Chief Justice Marshall joins in this dissent.

DECIDED OCTOBER 6, 1988 —
RECONSIDERATION DENIED OCTOBER 26, 1988.

*Mullins, Whalen & Shepherd, Andrew J. Whalen III,* for Mitchell.

*Rod G. Meadows, Richard D. C. Schrade, Jr., Kendric E. Smith,* for Wilkerson.

*Byrd & Anthony, Charles W. Byrd, Garland T. Byrd,* for Folden, Rowe, Garner, Neely, Amos.

*Jerry Willis, D. Ray McKenzie, Jr.,* for Kennedy et al.

*Frank J. Jordan, Jr., Hatcher, Stubbs, Land, Hollis & Rothchild, Clay D. Land,* for Parker et al.

