46479. DEPARTMENT OF TRANSPORTATION v. CITY OF ATLANTA et al.
(380 SE2d 265)

GREGORY, Justice.

This is a continuation of the litigation commonly referred to as the Presidential Parkway case. See *Dept. of Transp. v. Brooks*, 254 Ga. 303 (328 SE2d 705) (1985) and *Dept. of Transp. v. City of Atlanta*, 255 Ga. 124 (337 SE2d 327) (1985). Following the enactment of OCGA § 32-3-4 (b), Ga. Laws 1986, p. 1187, § 4, the Department of Transportation (DOT) filed an action to condemn the subject parcels of property for use in construction of the Presidential Parkway. Appellees, private landowners, were permitted to intervene in the case, and filed this action to set aside the declaration of taking. OCGA § 32-3-11. Following a hearing the trial court entered an order which, inter alia, enjoined the DOT from further construction on the Presidential Parkway project until the merits of appellees' motion to set aside the declaration of taking could be determined. The DOT appeals.

1. The trial court enjoined the DOT from proceeding with construction on the subject parcels as well as the adjacent parcels of project property to which the DOT has already acquired title on the ground that "irreparable injury to the parklands . . . would occur if construction should continue on the adjacent properties, rendering future rulings [of the court] a nullity."

The DOT argues that because as a matter of law the appellees cannot prevail on their motion to set aside, the trial court erred in ordering the injunction. Our study of the record indicates that any prediction of the outcome of this case is problematic because of the complexity of the issues involved. For that reason the trial court acted properly in not attempting to predict the outcome of the case, but instead in looking to other factors to determine whether the application for interlocutory injunction should be granted. See *Milton Frank Allen Publications v. Ga. Assn. of Petroleum Retailers*, 223 Ga. 784 (158 SE2d 248) (1967).

The trial court reasoned that an interlocutory injunction was nec-

essary in order to preserve the status quo prior to a determination of the merits of the case. The "purpose for granting interlocutory injunctions is to preserve the status quo of the parties pending a final adjudication of the case." *MARTA v. Wallace,* 243 Ga. 491, 494 (254 SE2d 822) (1979). The trial court should consider whether a denial of the petition for injunctive relief would work an " 'irreparable injury' to the plaintiff or leave the plaintiff 'practically remediless' in the event it 'should thereafter establish the truth of its contentions.' " Id. at 495. In this case the trial court reasoned that if the injunction were denied but the appellees ultimately prevailed on the merits, they would be remediless in that the subject property might by that time be substantially altered by the DOT's construction. We hold that the trial court did not abuse its discretion in enjoining construction on the Parkway project until it determines the merits of the motion to set aside the declaration of taking. OCGA § 9-5-8.

2. The DOT argues that the trial court has forfeited jurisdiction over the motion to set aside the declaration of taking because it failed to conduct a hearing on the merits of this motion within 60 days as is, the DOT maintains, required by OCGA § 32-3-11 (d). This code section provides that once the condemnee has filed a motion to set aside the declaration of taking,

> [t]he presiding judge shall thereupon cause a rule nisi to be issued and served upon the condemnor, requiring him to show cause at a time and place designated by the judge why the title acquired by the declaration of taking should not be vacated and set aside. . . . Such hearing shall be had not earlier than 15 days from the time of service of the rule nisi upon the condemnor, nor later than 60 days from the date of filing of the declaration of taking, and with the right of appeal by either party as in other cases.

As can be seen the statute requires that a hearing be held, not that a ruling be made, within the 60-day time period. Such a hearing was held at which time the court issued the injunction in question, required the parties to submit briefs on the issues raised by the motion to set aside, and scheduled several days of additional hearings to determine the merits of the motion. The DOT appealed the trial court's rulings before the additional hearings were held. We hold the trial court's procedure was proper under the statute.

3. (a) Last, the DOT argues the trial court has no authority to order the parties to mediate this case. The trial court directed the parties to participate in the process of mediation and engage in discussions in good faith. A deadline was fixed for the parties to furnish the names of those who would represent them in mediation. A media-

tor selected by the court would contact the representatives who were directed to make themselves available to the mediator at his convenience and they were to cooperate with the mediator.

We wish to encourage the use of mediation as a means of dispute resolution. At the same time we recognize that parties may not be ordered to settle their disputes. A great service a court may provide for litigants is a referral to mediation. There are times when parties have reached a standstill in settlement negotiations such that for either party to suggest mediation is to perhaps admit a weakness or at least suggest he is willing to yield further. At this point a referral to mediation by the court may secretly be welcomed by both sides. Then too, it may be that the parties are simply unaware of the benefit which may flow from mediation and a referral by a court may serve to introduce them to the process. In any event the court should simply make the referral and leave it to the parties from that point. The court may not order them to resolve their differences in mediation nor to yield on any matter they choose not to yield. At the same time every civil case including those where state agencies such as the DOT are involved may be considered a possible candidate for referral to mediation. It shall be done in a way not to interfere with nor delay the right of the parties to litigate the issues.

(b) The DOT maintains that mediation is inappropriate in this case where only issues of law or issues which involve "the exclusive functions of the DOT" are raised. According to the DOT, the issues presented in this case are those which only a court may resolve. This argument misperceives the purpose of mediation.

In his book, *The Mediation Process*, (1986), Christopher W. Moore discusses the four primary elements of mediation. First, it is a voluntary process. Second, mediation leaves the decision-making power in the hands of the parties. Third, the mediator is a neutral third party who has no decision-making authority. And last, the mediator assists the parties in voluntarily reaching a settlement.

Distinguishing between mediation and arbitration as methods of dispute resolution, Moore states that mediation is "an extension and elaboration of the negotiation process," where the mediator "has no authoritative decision-making power," while in arbitration a neutral third party makes a decision for the disputants regarding contested issues. Id. at p. 6. In arbitration the parties agree ahead of time that the arbiter's decision will be either advisory or binding whereas in mediation the decision-making power is left entirely in the hands of the parties in conflict. Id. at p. 7. The fact that the mediator has no authoritative decision-making power

distinguishes the mediator from the judge or arbiter, who is designated by law or contract to make a decision for the par-

> ties based on societal norms, laws or contracts rather than the specific interests or personal concepts of justice held by the parties. . . .The mediator works to reconcile the competing interests of the two parties. The mediator's goal is to assist the parties in examining the future and their interests or needs, and negotiating an exchange of promises and relationships that will be mutually satisfactory and meet their standards of fairness.

Id. at p. 17.

The DOT is correct in arguing that, should this case proceed to mediation, the mediator will not have the authority to determine the issues of law in this case. However, one purpose of mediation in this case might be to arrive at which issues of law will be raised before the trial court. Mediation would also allow the DOT to delineate those issues which the DOT alleges involve its "exclusive functions" in order to facilitate resolution of the dispute. There may be other avenues for resolution of this dispute not apparent on the face of the record.

It is incongruous to say one may order another to mediate a dispute as that violates the first premise of mediation, that it is a voluntary process. However, we hold a trial court has the authority to refer the parties to mediation.

(c) The order entered below can be construed to require the parties to mediate their dispute on penalty of contempt should they fail. That would amount to an order to settle the case which requires power the court does not have, or as an order to do a thing (mediate) which by its very nature must be voluntary. For this reason the mediation order must be reversed with direction that, should the trial court see fit, a simple referral to mediation consistent with this opinion be entered on the record.

If the trial court does refer the parties to mediation, and either party determines that none of the issues can be resolved by mediation, litigation will proceed according to the schedule set by the trial court.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Marshall, C. J., and Weltner, J., who dissent as to Divisions 1 and 3, and Bell, J., who dissents as to Division 3.*

CLARKE, Presiding Justice, concurring.

While I concur with the majority, I want to emphasize the propriety and, in fact, necessity of our courts utilizing alternative dispute resolution mechanisms.

In 1982, the people of Georgia spoke to the judicial system through the most solemn means at their command, the ratification of

a new Constitution. The voice of the people is memorialized in Article VI, Section IX, Paragraph I of the 1983 Constitution of Georgia where it instructs us to administer the judicial system in such a way that it will "provide for the speedy, efficient, and inexpensive resolution of disputes and prosecutions."

The people created our system of courts for the purpose of resolving disputes and if the courts do not serve that purpose they fail to justify their existence. I agree that all persons should have access to the courts, but I do not agree that this requires a full-blown trial in every case. In my view, the spirit of the Constitution and the best interest of the parties is frequently better served by court-encouraged settlement. We all recognize the propriety of a judge calling counsel into the court's chambers and guiding a settlement conference. I see no less propriety in the court's guidance that a mediator sit with the parties rather than the court itself.

The practice of a court requiring parties to make a good faith effort to mediate their differences is not foreign to the American judicial system. The federal courts frequently follow this procedure. An obvious example is 29 USCA § 108. This section of the code provides that no restraining order or injunctive relief shall be granted a complainant in a labor dispute who failed to make every reasonable effort to settle by negotiation or with the aid of mediation or voluntary arbitration.

I recognize that some parties may attempt to use court-directed mediation for the purposes of delay. I believe, however, that the trial court can and, in fact, must avoid this possibility by imposing strict time limitations upon the mediation procedure, and that the absence of such time limitation would cause the order of the court to fall upon review. With the time limitation in place, there is every reason to believe this procedure would expedite rather than delay the resolution of the dispute.

In an era of deep concern over delays in litigation and crowded court calendars, it is incongruous to discourage reasonable means of resolving disputes short of full-blown litigation. Mediation can save time for the parties and the courts. Mediation can save money for the parties and the courts. Mediation can lead to better results. These are the exact goals the people directed the courts toward when the Constitution referred to "speedy, efficient and effective resolution of disputes." I believe the Constitution points the courts in the direction of using mediation and other alternative dispute resolution procedures as tools within the judicial workshop available to repair the good order of society.

WELTNER, Justice, dissenting.

1. I dissent to Division 1 of the opinion. The trial court issued a

temporary restraining order that prohibited highway construction, including a prohibition of work on properties *not* involved in the Parkway dispute. The issue involved in this case is a legal one, it should be resolved as a legal issue. The trial court should be capable of doing so without delay, and *without* the imposition of equitable restraints. Hence, there being no threat of irreparable damage, the exercise of equitable power was unnecessary and inappropriate.

2. I dissent also to Division 3 of the opinion, bearing in mind the circumstances of this case. The majority recognizes that a court may not *compel* mediation, and suggests that if either party determines that no issues can be resolved by mediation, then litigation must proceed. *That* determination already has been made, however, as is fully apparent from the Department's appeal.

I am authorized to state that Chief Justice Marshall joins in this dissent, and that Justice Bell joins in its second division.

DECIDED JUNE 23, 1989.

*Michael J. Bowers, Attorney General, Roland F. Matson, Senior Assistant Attorney General, Charles M. Richards, Assistant Attorney General, Dow, Lohnes & Albertson, Terrence B. Adamson, Peter C. Canfield,* for appellant.

*Richard N. Hubert, Jr., Marva Jones Brooks,* for appellees.

*Edith Primm,* amicus curiae.