S90A0791. DEPARTMENT OF TRANSPORTATION v. CITY OF ATLANTA et al.
(398 SE2d 567)

BELL, Justice.

This appeal continues the litigation concerning the efforts of appellant Department of Transportation (DOT) to condemn portions of public parks owned by appellee City of Atlanta, for the purpose of building a limited-access highway known as the Presidential Parkway. *Department of Transp. v. City of Atlanta,* 255 Ga. 124 (337 SE2d 327) (1985). Other appellees are individual persons and civic groups that the trial court permitted to intervene in the litigation.

This appeal chiefly involves issues concerning the constitutionality of the State Commission on the Condemnation of Public Property (the Commission). OCGA §§ 50-16-180 to 183. The constitutional issues concern the grant to the Commission of the power to approve the acquisition of public property by a state agency through the power of eminent domain. OCGA § 50-16-182. Pursuant to the grant of this

---

power, the Commission, which is comprised of executive members of the government, is to approve the taking if it determines the taking is "reasonable, necessary, and in the public interest." OCGA § 50-16-183 (b). More specifically, the constitutional issues concern whether the statutes granting to the Commission the power to approve the taking of municipal property violate Art. I, Sec. II, Par. III of the 1983 Georgia Constitution, which provides for the separation of the legislative, executive, and judicial branches of government,[1] and Art. III, Sec. I, Par. I of the 1983 Georgia Constitution, which grants the General Assembly the legislative power of the state.[2] Other constitutional issues concern whether the statutes governing the Commission's approval of the acquisition of public property violate procedural and substantive due process. A final issue raised by this appeal concerns whether the trial judge should have recused himself, on the ground of alleged bias against DOT.

The trial court held the Commission and the statutes governing it unconstitutional on all the foregoing grounds. The trial court denied DOT's motion to recuse. We reverse on the constitutional issues, but affirm the denial of the recusal motion.

In *Dept. of Transp. v. City of Atlanta,* supra, 255 Ga. 124, we held that existing statutes did not provide the DOT with specific authority and procedures to condemn public property. Thereafter, the General Assembly enacted certain laws to provide DOT and other state agencies with specific procedures to condemn public property. See Ga. L. 1986, pp. 1187-1196 (hereafter sometimes referred to as the Act). The relevant portions of the Act have been codified at OCGA §§ 50-16-180 to 183. The Act created the State Commission on the Condemnation of Public Property, comprised of the Governor, the Lieutenant Governor, the Secretary of State, the State Auditor, and the Commissioners of Agriculture, Insurance and Labor. OCGA § 50-16-181 (a).

OCGA § 50-16-183 (a) provides that if the DOT or other state agencies desire to acquire public property by condemnation, the DOT or other agencies must first obtain approval from the Commission. OCGA § 50-16-183 (b) provides that:

> If the Commission determines that the acquisition of the public property by condemnation is reasonable, necessary,

---

[1] Art. I, Sec. II, Par. III, provides as follows:
The legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided.

[2] Art. III, Sec. I, Par. I, provides as follows:
The legislative power of the state shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives.

and in the public interest, it shall grant its approval for such acquisition.

The Commission is not required to hold a hearing before approving an application for condemnation. If the Commission approves the acquisition of public property by condemnation, the DOT or other agency may then acquire the public property pursuant to the procedures specified in the applicable condemnation laws. OCGA § 50-16-183 (c).

In July 1986 DOT filed an application with the Commission, seeking approval to condemn portions of the subject parks. On September 26, 1986, the Commission approved the condemnation.

On July 25, 1988, DOT filed the instant condemnation petition. Various individual persons and civic groups moved to intervene, and the trial court granted the motions. The intervenors moved to set aside the declaration of taking, raising, inter alia, separation-of-powers and due-process issues regarding the Commission.

Subsequently, the trial court enjoined the construction of the Presidential Parkway pending a decision on the merits of appellees' motion to set aside the declaration of taking. The court also ordered the parties to participate in the process of mediation. We affirmed the injunction, and reversed the order requiring the parties to mediate. *Department of Transp. v. City of Atlanta*, 259 Ga. 305 (380 SE2d 265) (1989). On September 15, 1989, following receipt of the remittitur from this Court, the trial court conducted a status conference with the parties. At the start of the hearing, the court noted that it had met with the parties to determine whether they desired to meet voluntarily with a mediator. The court stated that the city and the intervenors had agreed to mediate, but that DOT had not. The court stated it was satisfied the parties had acted in good faith in exploring the possibility of mediation, and that the court would not appoint a mediator. The court then proceeded with a hearing regarding the merits of the case. At the end of the hearing, the trial judge remarked that

I do find it strange that the Ethiopians and Eritreans fought wars for 20 years and killed over a half a million people and they're still mediating this thing. The parkway — I really wonder who is civilized.

On September 20, 1989, DOT filed a motion to recuse the trial judge, asserting bias based on the above remark. On October 2, the judge denied the recusal motion.

On February 14, 1990, the judge entered an order setting aside the declaration of taking, holding that the Commission violates the

separation-of-powers clause of the 1983 Georgia Constitution, Art. I, Sec. II, Par. III, by delegating to executive branch members the legislative power of eminent domain.[3] The court also held that the Commission violated the separation-of-powers clause by delegating to the Commission the power to determine the use of municipal property, a power the court determined was exclusively within the province of the General Assembly. The court also held that the delegation to the Commission of the foregoing powers was without appropriate guidelines, and thus further constituted an unconstitutional delegation of legislative authority. In addition, the court concluded that the Act violated procedural due process because it did not give the public any notice of, or an opportunity to be heard in, the proceedings before the Commission. Finally, the court ruled the Act violated substantive due process. The court based this ruling on its conclusion that any decision under the Act was necessarily arbitrary and capricious because the General Assembly failed to provide adequate guidelines to the Commission and because the Act permitted the Commission to make its decision without taking any evidence.

DOT has appealed the denial of its recusal motion and the ruling that the Act is unconstitutional. We affirm the denial of the recusal motion, but reverse the ruling that the Act is unconstitutional.

1. The DOT first contends that the trial court erred by concluding the Act violates separation-of-powers principles.[4] We agree with this contention.

We start with the premise that the doctrine of separation of powers cannot mean a separation in all respects.

"While the Constitution declares that the three departments of government shall be separate and distinct, this separation is not and from the nature of things cannot be total." *Mayor &c. of Americus v. Perry*, 114 Ga. 871, 881 (40 SE 1004) (1902); *Beall v. Beall*, 8 Ga. 210 (1850). [*Greer v. State*, 233 Ga. 667, 668 (1) (212 SE2d 836) (1975).]

Moreover, because the principle that delegations of legislative power must be made with sufficient guidelines is related to the principle of separation of powers, we will discuss the nondelegation issue as well as the separation-of-powers issue in this division.[5]

---

[3] The parties do not dispute that the exercise of the power of eminent domain is a legislative function. See *State Highway Dept. v. Smith*, 219 Ga. 800, 803 (1) (a) (136 SE2d 334) (1964); Nichols on Eminent Domain, Vol. 1A, § 3.1 (3rd ed).

[4] In our analysis we refer only to the delegated power of eminent domain. As the same analysis would apply to the power to regulate municipal property, we do not deal with that power separately.

[5] Because this case involves a question regarding the delegation of legislative powers, we

The nondelegation doctrine is rooted in the principle of separation of powers, in that the integrity of our tripartite system of government mandates that the General Assembly not divest itself of the legislative power granted to it by Art. III, Sec. I, Par. I, of our Constitution, see generally *Mistretta v. United States*, ___ U. S. ___ (109 SC 647, 654, 102 LE2d 714) (1989). Recognizing that the General Assembly, in our complex society, cannot find all facts and make all applications of legislative policy, we have approved numerous delegations of legislative authority, provided the General Assembly has provided sufficient guidelines for the delegatee. See *Southern R. Co. v. Melton*, 133 Ga. 277, 281-296 (1) (65 SE 665) (1909); *Russell v. Venable*, 216 Ga. 137, 143-144 (5) (115 SE2d 103) (1960); *Scoggins v. Whitfield Finance Co.*, 242 Ga. 416, 417 (1) (249 SE2d 222) (1978); *Eaves v. Harris*, 258 Ga. 1, 5 (3) (364 SE2d 854) (1988); *State v. Moore*, 259 Ga. 139, 142-143 (8, 9) (376 SE2d 877) (1989). Some of these prior cases have involved delegations to executive officers. E.g., *Scoggins*, supra, 242 Ga. 416.

This Court, however, has never addressed whether the exercise of such delegated power by executive officials violates the separation-of-powers provision of our constitution, which provides, inter alia, that "no person discharging the duties of one [branch] shall at the same time exercise the functions of either of the others except as herein provided." Art. I, Sec. II, Par. III, 1983 Georgia Constitution. We now conclude, however, that, where such delegations are made with sufficient guidelines, an executive official's exercise of the delegated power does not violate Art. I, Sec. II, Par. III of the 1983 Georgia Constitution. We reach this conclusion, because, in such cases, the executive official or commission is not "exercis[ing] the functions of" the legislature, in that it is not making a purely legislative decision, but is acting administratively pursuant to the direction of the legislature.

In the instant case, the controlling issue is thus whether the General Assembly enacted sufficient guidelines for the Commission to follow. In other cases we have specifically found that delegations of the power of eminent domain such as that here contain sufficient guidelines. E.g., *Williamson v. Housing Auth. of Augusta*, 186 Ga. 673, 680-681 (4) (199 SE 43) (1938). Moreover, in this case, by directing the Commission to determine whether the taking of public property is in the public interest, the General Assembly has directed the Commission to consider whether the current public use of the property or the proposed public use of the property is more in the public interest.

---

note that it is unlike several of our prior separation-of-powers cases, in which the General Assembly took for itself the power of another branch. E.g., *Greer v. State*, 233 Ga. 667, 668 (1) (212 SE2d 836) (1975). Here, executive branch members have not attempted to usurp a legislative function.

We find the guidelines in this case are sufficient under the standards enunciated in the prior cases of this court. E.g., *State v. Moore*, 259 Ga. at 142-143; *Eaves v. Harris*, supra, 258 Ga. at 5.

For the foregoing reasons we conclude that the authority granted the Commission does not amount to an improper delegation of legislative power and does not violate separation-of-powers principles.

2. The DOT next argues that the trial court erred in holding that the Act violates procedural due process. We agree.

Courts have widely recognized that determining the necessity of taking a piece of property is a legislative decision, and that therefore private property owners are not entitled to notice or an opportunity to be heard.[6] E.g., *State Highway Dept. v. Smith*, 219 Ga. 800, 803-804 (1) (a) (136 SE2d 334) (1964). The appellee-intervenors argue that, as municipal property is involved, notice and an opportunity to be heard must be given. However, we can see no constitutional basis for the argument that more process is due when public property is involved than when private property is involved.

3. We next turn to DOT's argument that the trial court erred in holding that the Act violates substantive due process. We find that it does not. Substantive due process protects property owners from the arbitrary and capricious exercise of the power of eminent domain. See Nichols on Eminent Domain, Vol. 1A, § 4.9 (3rd ed.). Here, the trial court ruled that any decision made under the Act was necessarily arbitrary and capricious, because the Act contains insufficient guidelines and does not require the taking of evidence. However, in Division 1 of this opinion we have already decided that the Act does provide sufficient guidelines. Moreover, although the Act does not require taking evidence, the Act provides that the Commission may require the submission of information from the applicable state agency that it needs to make its decision, OCGA § 50-16-183 (b), and may enact "rules and regulations as may be necessary to enable [it] to carry out" its duties, may "utilize the resources of any department or agency of the state . . . to assist it in making" any of its determinations, and may appoint hearing officers and investigators "as it deems proper to receive public comment and make reports or recommendations to the commission," § 50-16-183 (d). Thus, we find the Act provides the Commission with adequate authority to reach a reasoned decision in each request for approval that comes before it, and we are unwilling to conclude that every taking decision made pursuant to the

---

[6] We note that there is no discrepancy between our statement here that the taking decision is essentially legislative and our holding in Division 1 that the Commission was acting administratively. The taking decision is legislative in nature, but, with proper guidelines, may be accomplished administratively. The fact that it is accomplished administratively does not change the legislative nature of the decision.

Act is arbitrary and capricious.

4. Finally, we consider the DOT's argument that the trial judge erred in denying its motion to recuse the judge. DOT contends that the judge's in-court comment concerning the Ethiopian and Eritrean conflict warrants the judge's recusal, because, based on the comment, a reasonable person might conclude the judge has a personal bias against the DOT. See Georgia Code of Judicial Conduct, Canon 3 (C) (1) (a).[7] We conclude, however, that the comment merely indicates some irritation with DOT's refusal to mediate this dispute, and does not indicate the type of personal bias necessitating recusal. See *Birt v. State*, 256 Ga. 483, 485-486 (4) (350 SE2d 241) (1986); *Jones v. State*, 247 Ga. 268, 271 (4) (275 SE2d 67) (1981).

*Judgment affirmed in part and reversed in part. All the Justices concur, except Smith, P. J., and Hunt, J., who dissent.*

SMITH, Presiding Justice, dissenting.

There are two equally important constitutional provisions that mandate affirmance of the trial court's order and judgment. The first is found in Art. III, Sec. I, Par. I of the 1983 Constitution of the State of Georgia; it provides:

The legislative power of the state shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives.

"This court has repeatedly held that the quoted clause of the Constitution renders void any attempt to delegate legislative powers. [Cits.]" *Phillips v. City of Atlanta*, 210 Ga. 72, 74 (77 SE2d 723) (1953). When the Court reexamined its holding in *Bennett v. City of Baxley*, 149 Ga. 275 (99 SE 864) (1919), in *Phillips*, 210 Ga. at 75, it stated:

We wish at this time to put at rest any doubts resulting from that case. Obviously, incorporating additional territory in a municipality was *legislative in character and in fact*, and the Constitution clearly prohibited the exercise of legislative powers by other than the General Assembly. The act there was, for this reason, unconstitutional and this court should have so held. (Emphasis supplied.)

---

[7] Canon 3 (C) (1) (a) provides that
(1) Judges should disqualify themselves in proceedings in which their impartiality might reasonably be questioned, including but not limited to instances where:
    (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer.

The Court in *Phillips*, id. at 77, issued this warning:

> The demonstrated wisdom of our American system of representative government and public laws enacted by representatives freely chosen is enough to demand extreme caution and critical examination of any proposed departure therefrom. History warns us of tragedies endured by the individual under practically every other system.

If an act is "legislative in character and fact," id. at 75, it cannot be delegated unless it complies with the standards set out in *Phillips*, id. at 74, which states that there are only

> two types of legislation [that are] not repugnant to the Constitution: the first of such types being in cases where, after a legislative enactment has plainly set forth the *purpose* of the legislation and *marked its limits*, it then provided that designated *administrative officers* should have power to *promulgate rules* within the scope of the legislation, designed to fully *administer* and *give effect* to that law; and second, legislation to which a referendum is attached which provided that it would become a law only after having received a favorable vote of the people to be affected. . . . (Emphases supplied.)

This Court recently relied upon *Phillips*, supra, in *Mitchell v. Wilkerson*, 258 Ga. 608, 610 (372 SE2d 432) (1988), when it held that an election recall statute's "attempt to transfer the selection of the reasons to the applicant amounts to an impermissible delegation of legislative authority." Id. at 609. Similarly, the statutes at issue here, OCGA § 50-16-180 through 183, create an impermissible delegation of legislative authority because they do not comport with the *Phillips*, supra, standard. The purpose of the legislation, the condemnation of public property, has not been expressly set out, the limits of the commission are not marked, administrative officers have not been designated, and the officers designated have not had their power limited to the promulgation of rules within the scope of the legislation designed to only administer and give effect to the law. The act is legislative in character and fact, and it is an unconstitutional delegation of authority under Art. III, Sec. I, Par. I of the 1983 Constitution of the State of Georgia.

The statutes are also unconstitutional under a second constitutional provision, Art. I, Sec. II, Par. III of the 1983 Constitution of the State of Georgia, which provides:

> The legislative, judicial, and executive powers shall forever

remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the function of either of the others except as herein provided.

The first part of the strongly worded constitutional provision demands that the three branches of government "forever remain separate and distinct." The second part forbids any person from discharging the duties of one branch of state government while exercising the functions of another branch.

This Court examined the above provision in *McCutcheon v. Smith*, 199 Ga. 685, 690-91 (35 SE2d 144) (1945), and it stated:

> While the line of demarcation separating the legislative, judicial, and executive powers may sometimes be difficult to establish, and for this reason each of the three co-ordinate branches of government frequently invades the province of the others, it is nevertheless essential to the very foundation of our system of government that the mandate of the constitution be strictly enforced.

With regard to the second half of the constitutional prohibition, the Attorney General opined in 1988 Op. Atty. Gen. No. 88-11:

> The parameters of this constitutional principle of "separation of powers" have been well defined by Georgia case law. For example, the Georgia Supreme Court has held that members of the General Assembly could not sit on the governing body of the World Congress Center Authority because the authority was a public corporation which performed executive function. *Greer et al. v. State of Georgia et al.*, 233 Ga. 667 (1975). In another case, the Georgia Supreme Court held that members of the General Assembly could not sit as members of the State Properties Commission because the commission was an agency within the executive branch of state government. *Murphy et al. v. State of Georgia*, 233 Ga. 681 (1975). Since the State Board of Postsecondary Vocational Education is likewise an agency within the executive branch of state government, a member of the General Assembly is precluded from performing functions of a member institution of the State Board of Postsecondary Vocational Education.

> The holdings in *Greer*, supra, and *Murphy*, supra, clearly stand for the proposition that a member of the General Assembly cannot discharge the duties or exercise the functions of an agency within the executive branch of state govern-

ment.

Likewise, the clear and mandatory doctrine of separation of powers prohibits the converse; a member of the executive branch may not exercise the functions of the legislative branch.

The powers and duties granted to the members of the commission (all members of the executive branch) are legislative powers which include: "the power and duty to approve the acquisition of public property by condemnation and the power of eminent domain[,]" OCGA § 50-16-182, and the power and final authority to determine whether "the acquisition of the public property by condemnation is reasonable, necessary, and in the public interest[.]" OCGA § 50-16-183 (b). The trial court specifically found that "[b]oth the Intervenors and the DOT agree that the Commission's decision to approve or disapprove the condemnation of public property is a legislative determination[,]" (Trial Court order at 10), and the majority opinion acknowledges that the decisions are legislative decisions. (Majority opinion at 701, fn. 3.) This delegation is impermissible under our constitution. Any attempt by the members of the executive branch of government to exercise the function of the legislative branch is unconstitutional and a criminal offense.

The general assembly strengthened its intention to forever uphold the constitutional provisions when it enacted OCGA § 16-10-9 which states, in pertinent part:

> (a) It shall be unlawful for:
> (3) Officers or employees of the executive branch of the state government to accept or hold office or employment in the legislative or judicial branches of the state government.
> (b) A person who knowingly disburses or receives any compensation or money in violation of this Code section is guilty of a misdemeanor.

The members of the commission are officers of the executive branch of state government who have been appointed to hold office as members and officers of the State Commission on the Condemnation of Public Property. OCGA § 50-16-181 (a) & (b). These officers are to be compensated for their "traveling and other actual expenses incurred in the performance of their official duties as commission members." OCGA § 50-16-183 (e). The conflict is obvious; the function of the executive branch is the enforcement of laws duly passed upon by the General Assembly. The separation of these governmental functions is the bedrock that our democratic government rests upon. It is the heart of our system of checks and balances.

The conflict in this case is far greater than other conflicts that have been seen by this Court. When Ms. Mary Jane Galer, tenured associate professor and librarian at Columbus College, was elected to represent the 97th District in the Georgia House of Representatives, this Court, relying on the separation of powers provision, held that Ms. Galer could hold either her position at Columbus College[8] or serve in the General Assembly, but "she may not hold them at the same time." *Galer v. Board of Regents*, 239 Ga. 268, 271 (236 SE2d 617) (1977). The rationale for the decision, id. at 270, was as follows:

[T]his doctrine is the means by which "democracy undertakes to preserve the liberties of the people from excessive concentrations of authority." [Cit.] Common sense suggests that this doctrine as applied through [OCGA § 16-10-9] is an attempt by the General Assembly to prevent the obvious conflicts of interest inherent in situations where an individual serves concurrently in two of the branches of state government.

More recently the inherent evil of allowing persons to discharge the duties of one branch of government while exercising the functions of another was discussed in *Fowler v. Mitcham*, 249 Ga. 400, 402 (291 SE2d 515) (1982) as follows:

This is analogous to the effect of [OCGA § 16-10-9], which enforces the separation-of-powers provision of our State Constitution as to *state* offices. See *Galer v. Board of Regents*, [supra]. If permitted to serve in their dual capacities as aldermen (legislative) and policemen (executive), the appellants could not only vote to set their own salaries, but also enforce ordinances which they had participated in enacting.

The above constitutional provisions mandate this Court's affirmance of the trial court's order and judgment. Members of the executive branch of state government are constitutionally prohibited from making final legislative decisions regarding the condemnation of pub-

---

[8] "Columbus College, a member institution of the University System, is an agency of the executive branch of the state government. . . ." *Galer*, 239 Ga. at 269. How can this Court allow the top executive officers of the State to serve in a legislative function while performing their executive duties when it forbid Ms. Galer? Either, 1) this Court viewed a librarian who wished to serve in the House of Representatives as more of a threat to the "excessive concentrations of authority" and as creating an "obvious conflict[]" of interest" than the top executive officers of the State functioning as legislators while deciding what public property should be condemned, or 2) this Court has just expunged two constitutional provisions by judicial fiat. Either way, the majority is wrong.

lic property. Legislative acts can only be delegated to administrative officers after the requirements established by our previous decisions have been accomplished.

HUNT, Justice, dissenting.

The commission is established, by delegation of legislative power, to exercise the function of eminent domain. In the context of a separation of powers dispute, a proper delegation of legislative authority is accomplished only when the body to whom such authority is delegated is bound by guidelines so that its duties are merely administrative, not legislative. Thus, in this case, assuming the existence of sufficient and specific guidelines, the function of the commission would be administrative, and the fact that some of its members were from the executive branch would be of no consequence. But here no such guidelines exist. The standard set forth in OCGA § 50-16-183 (b) — that the commission shall grant approval for acquisition of public property by condemnation where reasonable, necessary and in the public interest — provides no guidelines realistically restricting its actions. None of the cases cited by the majority supports the premise that the guidelines are sufficient for this purpose. Instead of justifying its characterization of the actions of the commission as administrative, the majority has simply abandoned the long-settled rule, reiterated in an earlier opinion in this case, that delegations of the authority to exercise the right of eminent domain must be strictly construed. *Department of Transp. v. City of Atlanta*, 255 Ga. 124, 132 (337 SE2d 327) (1985).

The effect of this departure cannot be underestimated. As pointed out by the intervenors, while most citizens are accustomed to their local legislators participating in what might be unpopular decisions as to what is "reasonable, necessary, and in the public interest," it is unprecedented that an ad hoc commission have the power to destroy, alter, and abolish municipal park lands with no guidance whatsoever.

For the foregoing reasons, I respectfully dissent.

DECIDED DECEMBER 5, 1990 —
RECONSIDERATION DENIED DECEMBER 20, 1990.

*Michael J. Bowers, Attorney General, Roland F. Matson, Charles M. Richards, Senior Assistant Attorneys General,* for appellant.

*Remar & Graettinger, Robert B. Remar, Susan M. Garrett, Chamberlain, Hrdlicka, White, Johnson & Williams, Richard N. Hu-*

*bert, Kendric E. Smith,* for appellees.