S09A1831. GEORGIA STATE LICENSING BOARD FOR RESIDENTIAL AND GENERAL CONTRACTORS v. ALLEN et al.
(692 SE2d 343)

HINES, Justice.

This is an appeal by the Georgia State Licensing Board for Residential and General Contractors ("Board") from two orders of the Superior Court of Muscogee County in this suit by more than 40 contractors, Richard Allen et al. (collectively "plaintiffs"), against

---

the Board and the Columbus Muscogee County Consolidated Government ("County") seeking declaratory judgment, injunctive relief, and damages in regard to a statewide licensing system for residential and general contractors ("licensing law"). See OCGA § 43-41-1 et seq. The first order at issue denied the Board's "Special Appearance Motion to Dismiss or, in the Alternative, Motion to Transfer Proceedings"; the second challenged order granted the plaintiffs a preliminary injunction regarding the enforcement of the licensing law. For the reasons that follow, we affirm the judgment denying dismissal and a change in venue and reverse the judgment granting a preliminary injunction.

The Board is responsible for licensing and regulating residential and general contractors in Georgia. See OCGA § 43-41-1 et seq. On and after July 1, 2008, a valid residential or general contractor license issued by the Board is required to lawfully engage in the business of residential and general contracting within the state. OCGA §§ 43-41-9 (a),[1] 43-41-17 (a).[2] For an eighteen-month period

---

[1] OCGA § 43-41-9 (a) provides:

If an individual applicant proposes to engage in residential or general contracting in the individual's own name or a trade name where the individual is doing business as a sole proprietorship, the license shall be issued only to that individual. Where an applicant under this chapter is seeking issuance of a residential or general contractor license on behalf and for the benefit of a business organization seeking to engage in residential or general contracting as a business organization, the application for a license under this chapter must be submitted by and through an individual qualifying agent for such business organization or entity and expressly on behalf of such business organization or entity. In such case, the license shall be issued to the individual qualifying agent and to the affiliated business organization or entity on whose behalf the application was made. It shall be unlawful for any person, firm, corporation, or association to operate a business organization or entity engaged in the business of residential or general contracting without first obtaining a license from the appropriate division after the effective date of the licensing requirements as specified in subsection (a) of Code Section 43-41-17. The appropriate division shall not issue a license to any business organization or entity to engage in residential or general contracting unless such business organization or entity employs at least one currently licensed individual residential or general contractor serving as its qualifying agent who is actually engaged by ownership or employment in the practice of residential or general contracting for such business organization or entity and provides adequate supervision and is responsible for the projects of such business organization or entity. A business organization may allow more than one person to act as a qualifying agent for such organization, subject to each such individual qualifying agent having successfully satisfied the requirements for issuance of a license under this chapter and having obtained issuance of such a license by the appropriate division. Each such business organization shall have at least one qualifying agent in order to be considered authorized to engage in such contracting business.

[2] OCGA § 43-41-17 (a) provides:

The licensing requirements imposed by this chapter and the sanctions and consequences relating thereto shall not become effective and enforceable until July 1, 2008. On and after such date, no person, whether an individual or a business organization, shall have the right to engage in the business of residential contract-

beginning January 1, 2006, it was possible for a contractor to apply for licensure by exemption from examination by filing an application with the Board with the required proof of the basis of the exemption. OCGA § 43-41-17 (a). After July 1, 2007, any applicant seeking licensure from the Board had to pass an examination and meet other qualifications. OCGA §§ 43-41-6 (a);[3] 43-41-17 (a).

OCGA § 43-41-17 (c)[4] provides for an exception to the require-

---

ing or general contracting without a current, valid residential contractor license or general contractor license, respectively, issued by the division under this chapter or, in the case of a business organization, unless such business organization shall have a qualifying agent as provided in this chapter holding such a current, valid residential contractor or general contractor license on behalf of such organization issued to such qualifying agent as provided in this chapter. Notwithstanding the foregoing, persons seeking licensure under this chapter and exemption from examination under paragraphs (1) and (2) of subsection (a) of Code Section 43-41-8 shall submit their applications, including all necessary proof of the basis of exemption from examination for such license, starting January 1, 2006. The period for submission of such applications and requests for exemption from the examination requirements shall extend thereafter for a period of 18 months. Furthermore, notwithstanding the foregoing, any person seeking licensure under this chapter and exemption from examination under paragraph (3) of subsection (a) of Code Section 43-41-8 may submit his or her application, including all necessary proof of the basis of such exemption starting January 1, 2007, and continuing thereafter.

[3] OCGA § 43-41-6 (a) states:

Anyone seeking to be licensed as a residential contractor or as a general contractor in this state shall file an application on a form provided by the residential contractor or general contractor division, respectively, accompanied by an application fee as provided by the board. Such an application may be submitted either by:

(1) An individual person seeking issuance of a license in his or her own name for purposes of engaging in the profession of residential or general contracting in his or her own name or doing business as an individual in a trade name as a sole proprietorship; or

(2) An individual person affiliated by ownership or employment with and acting as a qualifying agent for a business organization seeking to engage in the profession of residential or general contracting in the name of the business organization in accordance with and pursuant to Code Section 43-41-9.

Additionally, all applicants must submit to and successfully pass an examination prepared by, prepared for, or approved by the appropriate division, except where an applicant is otherwise qualified for licensure and has satisfied the appropriate division requirements and regulations for licensure pursuant to Code Section 43-41-8 exempting such applicant from the examination requirement or where the applicant is an individual acting as a qualifying agent for a business organization and has previously obtained and maintained continuously a license issued by the appropriate division, either as an individual doing business in his or her own name or doing business as an individual in a trade name as a sole proprietor or as a qualifying agent for another business organization.

. . .

[4] OCGA § 43-41-17 (c) provides:

Any person who holds a license issued under this chapter may engage in the business of residential or general contracting, but only as prescribed by the license, throughout the state and no municipality or county may require any such person licensed under this chapter to comply with any additional licensing requirements imposed by such municipality or county relative to the performance of construction work subject to the licensing requirements under this chapter. However, nothing in this chapter shall preclude the implementation and enforcement by any municipal-

ment to have state licensure, if the local municipality's or county's criteria for local licensure is "at least as strict and stringent, in the sole judgment of the board, as those for the issuance of a corresponding state-wide license." OCGA § 43-41-17 (c) (2) (A). The County had a local licensing program in place prior to the time the licensing law went into effect.

In the present action, plaintiffs claimed, inter alia, that they had all paid for and received a certificate of qualification from the County entitling them to apply for and obtain building and construction permits from the County "Office of Inspections and Code" for 2008; that such certificate constituted a valuable Fifth Amendment property right; that they all qualified for the examination exemption under the licensing law; that they did not timely apply for the examination exemption because they did not know about the licensing law because of the lack of timely notice by the County as required by OCGA § 43-41-14 (b);[5] and that the licensing law violated their rights to due process and equal protection under the State and Federal Constitutions. They petitioned the superior court for a preliminary injunction restraining the Board and the County from enforcing the licensing law pending a final determination in the case; a permanent injunction restraining enforcement of the licensing law until such time as "proper notice" was provided; a judgment

---

ity or county of a local rule, regulation, ordinance, order, or other requirement in effect and operation as of July 1, 2004, that requires a person to obtain a locally issued license, registration, or certification in order to:

(1) Engage in the construction of improvements to real property to the extent such activities are not encompassed by this chapter or by Chapter 14 of this title; or

(2) Engage in residential or general contracting within such jurisdiction; provided, however, that:

(A) The requirements and criteria for issuance of such local license, registration, or certification shall have been at least as strict and stringent, in the sole judgment of the board, as those for the issuance of a corresponding state-wide license issued under this chapter;

(B) Such local license, registration, or certification shall only apply to activities performed within the geographical limits of such municipality or county; and

(C) Such requirement shall not prevent or foreclose any contractor not holding such local license, registration, or certification but holding a valid and current state-wide license issued under this chapter or Chapter 14 of this title from the transaction of contracting business in such local jurisdiction within the scope of his or her state-wide license.

. . .

[5] OCGA § 43-41-14 (b) provides:

The licensing requirements imposed by this chapter and the effective dates of such licensing requirements must be posted by any county or municipality in this state charged with the duty of issuing building or other permits for construction work requiring performance by either a licensed residential contractor or a licensed general contractor in the same location in which such building or other permits are issued.

declaring that portions of the licensing law are void, unconstitutional, and ineffective; an award of damages against the County; and an award of attorney fees and expenses of litigation. At the hearing in the matter, the attorney for the plaintiffs informed the superior court that the only constitutional challenge the plaintiffs were pursuing was a due process argument regarding OCGA § 43-41-14 (b), and that it was the only portion of the licensing law that the plaintiffs sought to have declared unconstitutional. The superior court found, inter alia, that the County was one of the few counties in Georgia with its own residential and general contractor's examination and certification process; that the Board was unable to determine whether the County's licensing program was sufficient to meet the standards of OCGA § 43-41-17 (c), until shortly before the licensing law came into effect; that the Board's decision came after the examination exemption deadline had passed; that even though the General Assembly recognized that "a lot of people had not received notice of the new law," it either "forgot" or "intentionally omitted" extending the date by which an applicant could file for an examination exemption; that it appeared likely that notice was not given in Muscogee County to individuals holding certificates of qualification and business licenses of the right to apply for an exam exemption before July 2, 2007, as such a notice requirement was not mandated by the then applicable law; and that the immediate and irreparable harm to the plaintiffs outweighed the burden on the Board and the County. The court ordered that the County Office of Code and Enforcement return to the permitting practices in place on June 30, 2007 and continue to do so until further order of the court, and that building permits be issued to those individuals and entities holding certificates of qualification and business licenses in the County for 2007 and who would have otherwise been entitled to such permit on June 30, 2007. The court made no express determination about the constitutionality of any aspect of the licensing law.

1. The Board contends that the superior court erred in holding that venue as to the Board was proper in Muscogee County, the domicile of the County defendant, rather than in Bibb County, the alleged domicile of the Board. It argues that this is so because the suit is an equitable action, and there is not substantial equitable relief common to it and to the County. However, the contention is unavailing.

The plaintiffs maintain that as the Board is a State agency, it may be sued in any Georgia county. See OCGA § 50-13-2;[6] *Hoffman*

---

[6] OCGA § 50-13-2 provides in relevant part:
    As used in this chapter, the term:
      (1) "Agency" means each state board, bureau, commission, department,

*v. Dept. of Corrections*, 218 Ga. App. 363 (460 SE2d 882) (1995). But, pretermitting a finding of statewide venue, it is plain that venue of the present suit is proper in Muscogee County. OCGA § 43-1-6, in relevant part, provides, "[t]he venue of any action involving the members of any professional licensing board shall be governed by the laws of this state pertaining to venue. . . ." And certainly, as the Board notes, our State Constitution provides, "[e]quity cases shall be tried in the county where a defendant resides against whom substantial relief is prayed." 1983 Ga. Const., Art. VI, Sec. II, Par. III. See *Agri-Cycle LLC v. Couch*, 284 Ga. 90, 91 (1) (663 SE2d 175) (2008). Even assuming arguendo, that the Board is a nonresident of Muscogee County, a nonresident may be joined in an equitable suit, if substantial equitable relief is common to the nonresident and the resident defendant. *Bloodworth v. Bloodworth*, 225 Ga. 379, 385 (1) (b) (169 SE2d 150) (1969), citing *I. Perlis & Sons v. Nat. Surety Corp.*, 218 Ga. 667, 668 (129 SE2d 915) (1963). It is the relief sought, that is, the prayer for a remedy, not the relief granted that is at issue. *Shaheen v. Dunaway Drug Stores*, 246 Ga. 790, 791 (273 SE2d 158) (1980); *Madray v. Ogden*, 225 Ga. 806, 809 (171 SE2d 560) (1969). This is necessarily so inasmuch as venue is a threshold matter. Examination of the complaint in this case and the prayers for relief plainly demonstrate that there was substantial equitable relief sought which was common to the Board and to the resident County; the complaint alleges that enforcement of the licensing law by both defendants would cause irreparable injury to the plaintiffs and it asks that preliminary and permanent injunctions be issued against both defendants enjoining and restraining them from exercising any of the powers, rights or duties respecting enforcement of the licensing law.

2. The Board challenges the grant of the preliminary injunction on the bases that the superior court erred: when it based the injunction on its finding that individuals in Muscogee County who held certificates of qualification were not given notice to apply for examination exemption before July 2, 2007; when by the injunction it changed rather than maintained the status quo; when it ordered the County building officials to violate the enacted law, OCGA § 43-41-14 (a); when by the injunction it assisted, encouraged, and allowed the unlicensed practice of residential and general contracting in Muscogee County and implicitly enjoined the Board from enforcing the licensing law in that County; and when it issued an interlocutory injunction based upon an unverified complaint.

---

activity, or officer authorized by law expressly to make rules and regulations or to determine contested cases. . . .

It is plain that the gravamen of the plaintiffs' claims as well as the linchpin of the superior court's issuance of the preliminary injunction is the issue of notice as provided in OCGA § 43-41-14 (b). The plaintiffs urge that because of this statutory provision, the superior court did not err in finding that they were not given notice by the County as required by law, and implicitly that they did not have a full and fair opportunity to apply for an exemption from examination. However, the superior court was plainly in error in finding that harm flowed to the plaintiffs, i.e., the lack of notice of the licensing law resulting in the plaintiffs' consequent failure to comply with the licensing law and thereby obtain an exemption, from any failure on the part of the County to comply with OCGA § 43-41-14 (b), or to provide other specific notice of the licensing law going into effect. This statutory provision became effective on May 29, 2007, approximately a month before the July 1, 2007 deadline for filing an application for examination exemption; consequently, it would defy logic to find that the General Assembly intended that counties and municipalities provide posted notice of the examination exemption that had been available for almost 17 months prior to the effectiveness of the notice provision. Insofar as the superior court's finding that the General Assembly perhaps "forgot" to extend the date by which an applicant could file for an examination exemption impacts the claim that the notice provision in relation to it results in the denial of due process to applying contractors, it must be noted that "[t]he General Assembly is presumed to enact laws with full knowledge of the condition of the law and with reference to it, and the courts will not presume that the legislature intended to enact an unconstitutional law." *Hamilton v. Renewed Hope, Inc.*, 277 Ga. 465, 467 (589 SE2d 81) (2003) (citations and punctuation omitted).

The attack on the notice provision must fail for yet another more basic reason. By the plain language of OCGA § 43-41-14 (b), what is required to be posted are the "licensing requirements" and "the effective dates of such licensing requirements," not a way to avoid such requirements by exemption. In any event, even assuming that the enacted statutory posting provision was meant to apply, somehow retroactively, to the availability of exemption from examination or that the late effectiveness of the provision or the County's failure to timely post it caused detriment to the plaintiffs, this did not justify the injunctive relief granted on the basis of unconstitutional or insufficient notice under OCGA § 43-41-14 (b). OCGA § 1-3-6 provides that: "After they take effect, the laws of this state are obligatory upon all the inhabitants thereof. Ignorance of the law excuses no one." Thus, under this general statute the plaintiffs were charged with notice of the licensing law, OCGA § 43-41-1 et seq., including the time-limited provision allowing examination exemp-

tion. See *City Council of St. Mary's v. Crump*, 251 Ga. 594, 595 (2) (308 SE2d 180) (1983).

To the extent that the superior court entered the preliminary injunction on a basis other than the notice provision of OCGA § 43-41-14 (b), the relief granted was unwarranted for yet another reason. The only appropriate purpose for granting an interlocutory injunction is to preserve the status quo of the parties pending a final adjudication of the case. *American Lien Fund v. Dixon*, 286 Ga. 562 (690 SE2d 415) (2010); *Bailey v. Buck*, 266 Ga. 405 (1) (467 SE2d 554) (1996). And, the real consideration in a petition for interlocutory injunction should be

> whether the greater harm would result by the granting or the refusal of the interlocutory relief. In other words, if the danger to one party is great, while the probable harm to the other is minimal, then relief ought to be granted or refused in line with such probabilities. Accordingly, it has been held that an interlocutory injunction should be refused where its grant would operate oppressively on the defendant's rights, especially in such a case that the denial of the temporary injunction would not work irreparable injury to the plaintiff or leave the plaintiff practically remediless in the event it should thereafter establish the truth of (its) contention.

*Metropolitan Atlanta Rapid Transit Auth. v. Wallace*, 243 Ga. 491, 494-495 (3) (254 SE2d 822) (1979) (citations and punctuation omitted).

Here, the grant of the preliminary injunction operated oppressively on not only the rights of the defendant County and the defendant Board but on the rights of the citizens of this State. It effectively enjoined, without apparent valid basis, the operation of a licensing law enacted by the General Assembly expressly, "in the interest of public health, safety, and welfare, to safeguard homeowners, other property owners, tenants, and the general public against faulty, inadequate, inefficient, and unsafe residential and general contractors." OCGA § 43-41-1. Moreover, the refusal to grant the requested injunction would not work irreparable injury to the plaintiffs or leave them without remedy in the event they should ultimately prevail in their challenge to the licensing law. The plaintiff contractors have not shown that they could not lodge claims for money damages from any lost work or business opportunities as a result of operation of the licensing law during the applicable periods of time.

3. Our decision in Division 2 renders it unnecessary to address

the Board's remaining challenges to the grant of the preliminary injunction.

*Judgment denying the motion to dismiss or, in the alternative, motion to transfer affirmed; judgment granting a preliminary injunction reversed. All the Justices concur, except Carley, P. J., and Benham and Thompson, JJ., who dissent.*

BENHAM, Justice, dissenting.

I respectfully disagree with the majority's determination that the trial court erred in granting a preliminary injunction that enjoined appellant and the Consolidated Government of Columbus-Muscogee County from enforcing against appellees the state licensing law governing residential and general contractors. The trial court found it was "highly likely" that the local licenses issued by the consolidated government and held by appellees were valuable property interests protected by constitutional due process requirements; that appellees were not given notice of their right to apply for an "exam-less" state license; and that appellees had suffered immediate and irreparable damages as a result. Inasmuch as "[t]he granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case" (OCGA § 9-5-8), and an appellate court will not disturb the trial court's exercise of its "wide discretion . . . unless a manifest abuse of that discretion is shown" (*Glen Oak, Inc. v. Henderson*, 258 Ga. 455 (1) (369 SE2d 736) (1988)), I believe the trial court's preliminary injunction should remain in place until the underlying legal issues are resolved. As the majority notes, "the sole purpose for granting interlocutory injunctions is to preserve the status quo of the parties pending a final adjudication of the case." (Citation and punctuation omitted.) *Bailey v. Buck*, 266 Ga. 405 (1) (467 SE2d 554) (1996).

The major issue for determination in appellees' complaint for declaratory and injunctive relief and their claim for monetary damages is their entitlement to notice that they could apply to be exempt from the testing requirement of the new state-wide licensing program. See OCGA §§ 43-41-8 (a), 43-41-17 (c). The state-wide legislation, initially enacted in 2004 but, through a series of amendments, not effective until July 1, 2008,[7] requires any entity wishing

---

[7] The General Assembly's 2004 enactment of the state-wide licensing scheme for residential and general contractors initially had an effective date of two years following a line item appropriation of funds (Ga. L. 2004, p. 786, § 2), and licensed contractors who wished to apply for the exam-less exemption could do so for a six-month period which began one year after the effective date of the chapter. Ga. L. 2004, p. 809. In 2005, the General Assembly amended the legislation by removing the funding contingency and providing for an effective date of July 1, 2007, and for a six-month period during which applications for an exam-less exemption could be made, starting six months after the effective date of the legislation, i.e.,

to work as a residential or general contractor in Georgia as of that date to pass an exam and receive a state-issued license. However, a contractor in business in Georgia who is a Georgia resident and who holds a valid license issued by a local government following the contractor's passing of an exam "substantially similar to the state examination" could apply, within a certain period of time, for an exam-less state license. OCGA § 43-41-8 (a) (1). The General Assembly's 2007 amendment to the state licensing legislation pushed back the effective date of the licensing requirement (from January 1, 2008 to July 1, 2008), changed the time within which an application for an exam-less license could be made (formerly January 1 – December 31, 2006, now January 1, 2006 – June 30, 2007), and required certain local governments,[8] including the consolidated government, to post the licensing requirements and their effective dates. OCGA §§ 43-41-8 (a), 43-41-14 (b), and 43-41-17 (c) (2008). The 2007 amendments went into effect May 29, 2007, and gave locally-licensed contractors one month, until June 30, 2007, to apply for an exam-less state license. Several of the appellees, contractors who have local licenses from the consolidated government, testified at the hearing on the request for an injunction and the trial court found they would have been eligible to apply for an exam-less license. Yet none did because none was given notice of the opportunity to apply for exam-less state licenses.

Furthermore, prior to the enactment of the state licensing legislation on July 1, 2004, the consolidated government had required local contractors to obtain a locally-issued license in order to do contracting work in Columbus-Muscogee County. In light of the long-time existence of the consolidated government's licensing program, the consolidated government was entitled statutorily to implement and enforce its local licensing requirements if, in the sole judgment of the state licensing board, the requirements for issuance of the local license were "at least as strict and stringent . . . as those for the issuance of a corresponding state-wide license. . . ." OCGA § 43-41-17 (c) (2) (A). This statutory language echoes the language of OCGA § 43-41-8 (a) (1) (one with a locally-issued license

---

January 1 – June 30, 2006. In 2006, the General Assembly pushed back the effective date of the licensing requirement to January 1, 2008, and authorized exam-less exemption applications to be filed from January 1, 2006 – December 31, 2006. Ga. L. 2006, p. 272, § 2 (Ex. Session). In 2007, the Legislature changed the effective date of the licensing requirement to July 1, 2008, and authorized exam-less applications to be filed for 18 months, from January 1, 2006, through June 30, 2007. Ga. L. 2007, p. 569, § 9. The 2007 amendment also required the posting of the licensing requirements and their effective dates by local governments which issued building or other permits for construction work to be done by a licensed residential or general contractors.

[8] Those local governments that issued building or other permits for construction work to be done by a licensed residential or general contractors.

is eligible for an exam-less state license if he/she had to pass a local exam "substantially similar to the state examination . . ."). However, prior to the effective date of the state-wide licensing requirement, the state licensing board did not make a decision whether the exam required to receive a license from the consolidated government was "substantially similar to the state examination (OCGA § 43-41-8 (a) (1)) or "at least as strict and stringent . . . as those for the issuance of a corresponding state-wide license. . . ." OCGA § 43-41-17 (c) (2) (A). As found by the trial court, it was not until after the expiration of the period to apply for the exam-less exemption that the state licensing board determined whether the consolidated government's licensing program met the statutory requirements.

Because appellees were not notified of their ability to apply for and receive an exam-less license and because appellees are no longer able to work in their field since they do not have state-issued licenses, though they hold locally-issued licenses, I believe the trial court acted appropriately when it maintained the status quo by staying enforcement of the state licensing scheme against appellees and giving appellees the opportunity to apply for and receive the exam-less state licenses for which they qualify. Inasmuch as the facts of this case do not reflect a manifest abuse of the trial court's wide discretion with regard to the grant or denial of a preliminary injunction, I would uphold the trial court's exercise of its discretion. Accordingly, I dissent from the majority's decision to reverse that judgment.

I am authorized to state that Presiding Justice Carley and Justice Thompson join this dissent.

DECIDED MARCH 25, 2010.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Janet B. Wray, Senior Assistant Attorney General, Reagan W. Dean, Scarlett Elliott, Assistant Attorneys General*, for appellant.
*Waldrep, Mullin & Callahan, Neal J. Callahan, Marchetti & Lomax, Robert R. Lomax*, for appellees.