## 45233. EAVES et al. v. HARRIS et al.
(364 SE2d 854)

Hunt, Justice.

On October 16, 1987, Fulton County Commissioner A. Reginald Eaves was indicted by a federal grand jury on four counts of violations of the Hobbs Act, 18 USCA § 1951 et seq. The charges involved taking bribes from an agent posing as a developer seeking changes in zoning. Anticipating implementation of OCGA § 45-5-6, which provides that a public official under a felony indictment may be suspended from office, Eaves and two voters from his district brought this action to enjoin the Governor and the Attorney General from proceeding under the statute, contending the act is unconstitutional. The trial court refused to issue the injunction and Eaves and the voters appealed. We granted them an expedited review.

Although OCGA § 45-5-6 as initially passed in 1984, Ga. L. 1984, p. 1279, provided only for the suspension of public officials who were indicted for felonies under state law, it was subsequently amended in 1986, Ga. L. 1986, p. 600, to encompass federal felony indictments as well, OCGA § 45-5-6 (b), and as amended, it was in effect when Eaves was elected to his present term of office in 1986. Eaves and the two voters contend this statute is unconstitutional because it deprives them of due process and equal protection, violates the separation of powers, and conflicts with Art. II, Sec. II, Par. III of the Georgia Constitution, which prohibits one *convicted* of a felony from holding public office.

When relief was refused Eaves by the trial court, proceedings

under the statute continued while he pursued this appeal. The act requires that the attorney general forward to the governor a certified copy of the public official's felony indictment. Under subsection (e) of the act, the indicted public official is allowed fourteen days to seek suspension voluntarily. If the official does not agree to voluntary suspension — and Eaves did not agree — the governor must appoint a review commission, comprised of the attorney general and two public officials serving in the same capacity as the indicted official. OCGA § 45-5-6 (b). Governor Harris accordingly appointed Bibb County Commissioner Emory Greene and Clarke County Commissioner John Jeffreys to serve on the review commission along with Attorney General Michael J. Bowers.

The review commission must make a written report to the governor within fourteen days of the commission's appointment. "If the commission determines that *the indictment relates to and adversely affects the administration of the office of the indicted public official and that the rights and interests of the public are adversely affected thereby,* the commission shall recommend that the public official be suspended from office. If, and only if, the commission recommends suspension, then the Governor shall review the findings and recommendations of the commission and *may* suspend the public officer from office immediately and without further action pending the final disposition of the case or until the expiration of his term of office, whichever occurs first. . . . [T]he public official shall continue to receive the compensation from this office." (Emphasis supplied.) OCGA § 45-5-6 (c).

Though the act does not require that the review commission provide a hearing to the indicted official, Eaves and his lawyer were nonetheless invited to a hearing, at which they subsequently appeared. On the advice of the attorney general, and over Eaves' objection, the review commission declined to hear evidence concerning the merits of the charges against him. The commission, finding that the felony indictment related to Eaves' public office and adversely affected the public interest, recommended suspension. The Governor accepted the recommendation and suspended Eaves on November 20, 1987. This is the procedure that Eaves and the two voters contend is unconstitutional.

1. We have been cited no authority, nor do we know of any, recognizing a constitutional right of voters to continue to be represented by a person for whom they have previously voted but who has been subsequently indicted for a felony affecting his office. When Eaves' voters cast their ballots for him, the statute was in effect, providing that he could be suspended if he were indicted for a felony. His later suspension therefore did not in any way impair the voters' right to vote. Furthermore, the act provides that the Governor appoint some-

one else to represent the suspended official's constituents pending the resolution of the indictment. OCGA § 45-5-6 (d) (1). Thus, the voters are not unrepresented during this time. Since the voters have no constitutional rights which are being abridged by the statute, the trial court did not err in refusing injunctive relief to them.

2. (a) We do, of course, recognize that Eaves has a constitutional right to hold the public office to which he has been duly elected and that he cannot be deprived of that right through state action without due process of law. "But it is also true that an official takes his office subject to the conditions imposed by the terms and nature of the political system in which he operates." *Gordon v. Leatherman*, 450 F2d 562, 565 (5th Cir. 1971). Here the legislature made Eaves' right to continue to exercise the prerogatives of his office dependent upon his not being indicted for a felony. Such a law is not unfair; it bears a rational relationship to a compelling state interest — that of insuring the public's confidence in government. What was said in *Brown v. Dept. of Justice*, 715 F2d 662, 667 (D.C. Cir. 1983), a case regarding a public employee, applies with equal, if not greater, force to this case, where the one indicted is a public official: "An indictment is a public record, and public knowledge that an individual formally accused of job-related crimes is still on duty would undoubtedly erode public confidence in the agency. In addition, if an employee indicted on work-related charges were retained on the job and if the employee engaged in conduct of the sort alleged in the indictment, the functioning of the agency might be severely hindered or even undermined. . . . An employee's suspension pending disposition of the criminal charges thus safeguards the public interest by removing the employee from a position where he or she might repeat the alleged misconduct and thereby impede the lawful functioning of the agency and destroy public confidence in the agency. This does not violate the principle that the employee is presumed innocent until proven guilty. In suspending an employee solely on the basis of his or her indictment, the agency is making no assertion about the employee's guilt or innocence; rather, the suspension is merely a means of safeguarding the legitimate interests of the agency."

The suspension of an indictee is of limited duration[1] and exacts no loss of compensation. Thus, the act's measures intrude upon the constitutional rights of the public official only so far as is minimally necessary to maintain the public objectives. If the matter is resolved

---

[1] OCGA § 45-5-6 (d) (2) (i) provides that "[i]f a public official who is suspended from office under the provisions of this Code section is not first tried at the next regular or special term following the indictment, the suspension shall be terminated and the public official shall be reinstated to office. The public official shall not be reinstated under this subsection if he is not so tried based on a continuance granted upon a motion made by the defendant."

favorably to the official, he is fully restored to his former status. OCGA § 45-5-6(c). Balancing the public good against the indicted public official's right to hold office results in the conclusion that this law does not offend traditional notions of fair play and justice. *Daniel v. C & S Nat. Bank*, 182 Ga. 384, 396-398 (185 SE 696) (1936). In short, the statute does not on this score violate Eaves' right to due process.

(b) Eaves asserts, however, that the statute also fails to provide adequate *procedural* due process safeguards. His argument centers on his inability to put before the review commission the merits of the charges against him. He contends that procedural due process requires he be given the opportunity to challenge the validity of the indictment's charges, and that, in effect, the commission should decide his guilt or innocence before making its recommendation. Since such evidence was not permitted by the commission, the only evidence was the indictment.

In considering Eaves' due process challenge, we must always be cognizant of the *temporary* nature of the act's provisions and *the resulting lesser standard of procedural due process required*. In *Matthews v. Eldridge*, 424 U. S. 319, 334-335 (96 SC 893, 47 LE2d 18) (1976), the United States Supreme Court recognized that the amount of due process required depends upon the circumstances at hand: " ' "[d]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' [Cit.] '(D)ue process is flexible and calls for such procedural protections as the particular situation demands.' [Cit.]"

Significantly, this suspension entails *only* loss of official authority on a *temporary basis with no loss of pay*. What is more, the suspended official is safe-guarded under the statute from prosecutorial foot-dragging, so that if he is not promptly tried he is restored to office. Even more important, the indictment, as the triggering device, depends upon a finding by a properly constituted grand jury that probable cause exists to believe the official has committed a crime. Finally, the review commission of his peers must determine that such a charge would affect his job performance. A review panel "mini-trial" to prove misconduct is, by contrast, not a reasonable alternative procedure; mulling through the same evidence which may later be presented in court not only entails further risk for the official and further cost to the state, but would also constitute an improper interference with the criminal proceedings. Thus, the interests of both the official and the public are better protected by allowing suspension based on the fact of the indictment alone. We conclude, in sum, that the statute affords adequate due process protection to the public offi-

cial pending resolution of the indictment.[2]

(c) We also reject Eaves' claim describing the Governor's discretion under the act as absolute and unbridled, and as such, also depriving him of due process. The Governor's discretion is limited by the requirement that a body largely composed of the public official's peers finds his suspension warranted. Whatever "unbridled" discretion exists may be exercised only in favor of the public official: should the commission recommend *against* suspension, the governor has no authority to override it. Accordingly, the official's right of due process is not violated by the discretion afforded the Governor.

3. Nor is there any merit to Eaves' related contention that the Governor's discretion is so broad that it amounts to an improper delegation of the power to legislate under *Sundberg v. State*, 234 Ga. 482, 484 (216 SE2d 332) (1975). Compare *Williamson v. Housing Auth. of Augusta*, 186 Ga. 673, 681 (199 SE 43) (1938).

4. Eaves argues that he and the voters of his district are denied equal protection under the act. As to the voters, he contends that they, unlike other voters, are denied the representative of their choice. As we have stated earlier, we know of no constitutional right to be continuously represented by a particular elected official. Once elected, such a representative may leave office for a variety of reasons — one of which is provided under this statute. The candidates and the voters pursued the election under this condition, and the statute provides for a substitute representative while the public official is under suspension. See Division 1, supra.

In answer to Eaves' claim that he himself has been denied the right to equal protection, we find that the statute not only treats all elected officials similarly, but also has a rational basis for treating those public officials laboring under a felony indictment as a separate class. We consequently find no violation of equal protection. *Gray v. McLendon*, 134 Ga. 224 (4) (67 SE 859) (1910). See generally *G. W. v. State of Ga.*, 233 Ga. 274, 275 (210 SE2d 805) (1974).

5. Finally, we cannot agree that the act is pre-empted by the constitutional provision disqualifying for public office only persons who have been *convicted* of a felony. That same provision of the Constitution, 1983 Ga. Const., Art. II, Sec. II, Par. III, also provides that the

---

[2] In *Matthews*, supra, 424 U. S. at 334-335, the United States Supreme Court observed that its "prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; Second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and Finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." In light of the foregoing analysis in this subsection of our opinion, we hold that the challenged statutory procedure adequately meets this test on all counts.

legislature may establish *other qualifications for office* and thereby furnishes authority for this act. Because the statute provides *only for suspension* and *not removal* upon indictment, we find no conflict with the Constitution. Compare *Lucas v. Woodward,* 240 Ga. 770, 775 (243 SE2d 28) (1978); *Gray v. McLendon,* supra 134 Ga. at 239 (a).

In conclusion, for all these reasons, the trial court must be affirmed. *Daniel v. C & S Bank,* supra, 182 Ga. at 396-98. See generally Annot., 67 CJS 456, Officers, § 108; ANNO., 63A AmJur2d 874, Public Officers and Employees, §§ 289-295.

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents.*

SMITH, Justice, dissenting.

I am unable to agree with the majority's holding. The statute does violate Commissioner Eaves' constitutional right to due process.

The Attorney General stated that the commission "must accept the facts in the indictment for purposes of [the] deliberations as being true." He also stated that the following two questions must be answered by the review commission in making their decision. 1) "[I]f . . . the facts alleged in the four counts of the indictment are true, . . . would those allegations or do they relate to and adversely affect the administration of the office." 2) "[W]hether this indictment under this analysis relates to and adversely affects the interests of the public . . . "

Inasmuch as the statute only comes into action after the Attorney General has already decided that the indictment relates to the performance or activities of the office and no evidence is allowed, the review commission is forced to determine based solely on the four corners of the indictment, "that the indictment relates to and adversely affects the administration of the office of the indicted public official and that the rights and interest of the public are adversely affected thereby." OCGA § 45-5-6 (c). If the review commission finds in the affirmative, it must "recommend that the public official be suspended from office." Id. The following comment of one of the members of the commission indicates the fatal flaw in the statute: "One of the most difficult jobs I have, which is today, is to try and make an objective decision when in effect the decision has already been made." The statute, once triggered, makes the decision the review commission is supposed to make.

The statutory procedure does not comport with due process. "An elected city official who is entitled to hold an office under state law has a property interest in his office which can be taken from him only by procedures meeting the requirements of due process." *Crowe v. Lucas,* 595 F2d 985, 993 (5th Cir. 1979). "Due process of law, as guaranteed by article I, section I, paragraph III, of the [Georgia] Constitu-

tion (Code, Ann., § 2-103), includes notice and hearing as a matter of right in matters where one's property rights are involved. *Robitzsch v. State*, 189 Ga. 637 (7 S. E. 2d 387); *Southern Ry. Co. v. Town of Temple*, 209 Ga. 722, 724 (75 S. E. 554)." *Sikes v. Pierce*, 212 Ga. 567, 568 (94 SE2d 427) (1956). The statute does not provide for a meaningful hearing. There is no opportunity for the review commission to hear evidence[3] which might indicate that the indictment does relate to or adversely affect the administration of the office or the rights and interests of the public. More importantly, the statute does not provide the official an opportunity to present evidence to the contrary.

"All government, of right, originates with the people, is founded upon their will only, and is instituted solely for the good of the whole. Public officers are trustees and servants of the people and are at all times amenable to them." Constitution of Georgia of 1983, Article I, Section II, Paragraph I. Removal of a public official under OCGA § 45-4-6 without a meaningful hearing not only denies the public official his right to due process, it abolishes the right of his constituents to have their duly elected official in office, and it denies the official a fundamental presumption in the law — "Every person is presumed innocent until proved guilty."[4] OCGA § 16-1-5.

DECIDED FEBRUARY 16, 1988.

*Walbert & Hermann, David F. Walbert, Jesse B. Beasley, Jr.,* for appellants.
*Michael J. Bowers, Attorney General, Charles M. Richards, Assistant Attorney General, Meals, Kirwan, Goger, Winter & Parks, John J. Goger, David R. Bundrick, Larry H. Chesin, Floyd, Jones & Ware, Charles R. Floyd, Jr.,* for appellees.

---

[3] "[An] indictment is not evidence, but is merely the manner in which charges are brought before the court for trial." *Skipper v. State*, 257 Ga. 802, 805 (364 SE2d 835) (1988).
[4] Without a doubt, when an office holder is suspended, the public generally assumes he has been tried and found guilty. After the suspension, in the public's mind, any court trial is a mere formality.