**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
**physically received in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**May 27, 2026**

# In the Court of Appeals of Georgia

A26A0139. BANES et al. v. STATE OF GEORGIA.

PADGETT, Judge.

Appellants Marcello Banes and Stephanie R. Lindsey, who were elected members of the Newton County Board of Commissioners, were suspended from their positions pursuant to OCGA § 45-5-6 based on an indictment returned against them in federal court. They filed separate petitions for declaratory and injunctive relief, arguing that OCGA § 45-5-6 did not apply to their situations and that if the statute did apply, it violated their due process and equal protection rights under the federal and Georgia constitutions. The trial court rejected their arguments in a consolidated final order, concluding that it was bound by our Supreme Court's decision in *Eaves v. Harris*, 258 Ga. 1 (364 SE2d 854) (1988) (rejecting county

commissioner's due process and equal protection challenges to OCGA § 45-5-6 following his suspension based on a federal indictment), and that, to the extent that *Eaves* may have been based on an incorrect assumption about the statute's applicability to, and effect on, suspended officials under federal indictment, the appellants' due process and equal protection challenges still failed under the rationale set out in *Eaves*.

Appellants filed a consolidated notice of appeal to the Supreme Court, seeking to invoke the Supreme Court's appellate jurisdiction over constitutional questions. The Supreme Court transferred the appeal to this Court, noting that "[w]here a law has been held to be constitutional as against the same attack being made, the case requires merely an application of unquestioned and unambiguous constitutional provisions and jurisdiction of the appeal is in the Court of Appeals." *Banes v. State of Georgia*, Case No. S25A1319 (Ga. July 11, 2025) (quoting *Zarate-Martinez v. Echemendia*, 299 Ga. 301, 304 (788 SE2d 405) (2016) (punctuation omitted)).

1. *Factual and Procedural Background*

On June 11, 2024, Banes and Lindsey were indicted by a federal grand jury on a variety of felony counts related to money laundering, false tax returns, and false statements to a federal agent. According to the indictment, the charges stemmed from the transfer of a certain tract of land by the Joint Development Authority of

2

Jasper County, Morgan County, Newton County, and Walton County ("the JDA"), to a limited liability company ("the LLC"), which then sold the land to a company with whom Lindsey, an attorney and licensed real estate broker, had a brokerage agreement. Banes, who was Chair of the Newton County Board of Commissioners and served as one of Newton County's representatives on the JDA, facilitated the brokerage agreement between the company and Lindsey. Under the agreement, once the JDA — including Banes — voted to approve the sale to the LLC, thereby allowing the company to close on its purchase of the land, the company paid Lindsey a commission of $150,000. Without disclosure to the JDA or the company, and in violation of law, Lindsey then passed $100,000 of the commission to Banes through a newly-formed business entity they created.

Following the indictment, the Governor suspended Banes from office under OCGA § 45-5-6, until the expiration of his term of office on December 31, 2024.[1] In November 2024, however, both Banes and Lindsey ran for seats on the Newton County Board of Commissioners for the term beginning January 1, 2025, and won

---

[1] The suspension followed the recommendation of a statutorily-required review commission, which found that the indictment related to and adversely affected the administration of the office of Chair of the Newton County Board of Commissioners, and that the rights and interests of the public were adversely affected thereby.

their respective elections. On March 7, 2025, Banes and Lindsey were suspended from office pursuant to OCGA § 45-5-6, pending the final disposition of their criminal case or until expiration of their terms of office, whichever occurred first.[2]

Banes and Lindsey petitioned for declaratory and injunctive relief, contending that the Governor exceeded his statutory authority in re-suspending Banes and suspending Lindsey, and that even if OCGA § 45-5-6 provided the Governor that authority, their suspensions violated the Due Process and Equal Protection clauses of the federal and Georgia constitutions. The trial court denied their petitions after a hearing, and this appeal followed.

2. *OCGA § 45-5-6 and Eaves*

OCGA § 45-5-6 provides, in relevant part:

(b) Upon indictment for a felony by a grand jury of this state or by the United States, which felony indictment relates to the performance or activities of the office of any public official, the Attorney General or district attorney shall transmit a certified copy of the indictment to the Governor who shall, subject to subsection (e) of this Code section, appoint a review commission. Except as provided in this subsection, the

---

[2] The March 2025 suspension again was based on the recommendation of a review commission, which found that the indictment related to and adversely affected the administration of the office of the Newton County District 3 Commissioner (the seat held by Lindsey) and the office of Chair of the Newton County Board of Commissioners, and that the rights and interests of the public were adversely affected thereby.

commission shall be composed of the Attorney General and two public officials who hold the same office as the individual indicted. ...

(c) Unless a longer period of time is granted by the Governor, the commission shall make a written report to the Governor within 14 days. If the commission determines that the indictment relates to and adversely affects the administration of the office of the indicted public official and that the rights and interests of the public are adversely affected thereby, the commission shall recommend that the public official be suspended from office. If, and only if, the commission recommends suspension, then the Governor shall review the findings and recommendations of the commission and may suspend the public officer from office immediately and without further action pending the final disposition of the case or until the expiration of his or her term of office, whichever occurs first. During the term of office to which such officer was elected and in which the indictment occurred, if a nolle prosequi is entered, if the public official is acquitted, or if after conviction the conviction is later overturned as a result of any direct appeal or application for a writ of certiorari, the public official shall be immediately reinstated to the office from which he or she was suspended. While a public official is suspended under this Code section, the public official shall not be entitled to receive the compensation from his or her office. If the public official is reinstated to office, he or she shall be entitled to receive any compensation withheld under the provisions of this Code section. For the purposes of back compensation only, reinstatement may occur after the expiration of the public official's term of office.

....

(i) If a public official who is suspended from office under the provisions of this Code section is not first tried at the next regular or special term following the indictment, the suspension shall be terminated and the public official shall be reinstated to office. The public official shall not be reinstated under this subsection if he or she is not so tried based on a continuance granted upon a motion made only by the defendant.

OCGA § 45-5-6(b), (c), and (i).[3]

In *Eaves*, the Supreme Court considered a similar, if not identical, due process challenge to OCGA § 45-5-6 as appellants present here. There, Fulton County Commissioner Eaves had been indicted by a federal grand jury on charges related to taking bribes from a federal agent posing as a developer who was seeking zoning changes. *Eaves*, 258 Ga. at 1. Eaves sought to enjoin the Governor from proceeding under OCGA § 45-5-6, arguing that the statute deprived him of due process and equal protection and violated the separation of powers. Id.

While recognizing that a public official has a constitutional right to hold the office to which he was duly elected and that he cannot be deprived of that right by state action without due process of law, the Court nonetheless rejected Eaves' due process challenge, explaining that, in Georgia, a public official "takes his office

---

[3] Originally enacted in 1984 to authorize the suspension of certain public officials who were indicted for felonies under state law, OCGA § 45-5-6 was amended in 1986 to encompass federal felony indictments. See *Eaves*, 258 Ga. at 1.

subject to the conditions imposed by the terms and nature of the political system in which he operates," and his right to hold elective office is "dependent upon his not being indicted for a felony." *Eaves*, 258 Ga. at 3(2)(a). As the Court held, OCGA § 45-5-6 "is not unfair; it bears a rational relationship to a compelling state interest— that of insuring the public's confidence in government." Id. As the Supreme Court explained:

> The suspension of an indictee is of limited duration and exacts no loss of compensation. Thus, the act's measures intrude upon the constitutional rights of the public official only so far as is minimally necessary to maintain the public objectives. If the matter is resolved favorably to the official, he is fully restored to his former status. OCGA § 45-5-6(c). Balancing the public good against the indicted public official's right to hold office results in the conclusion that this law does not offend traditional notions of fair play and justice. In short, the statute does not on this score violate [the indicted official's] right to due process.

Id. at 3–4(2)(a) (citation modified).

Furthermore, with respect to Eaves' challenge to the statute's alleged failure to provide adequate procedural due process by not providing him the opportunity to contest the merits of the indictment before the review commission, the Court likewise emphasized the "*temporary* nature of the act's provisions and *the resulting lesser standard of procedural due process required*." *Eaves*, 258 Ga. at 4(2)(b). Viewed

7

through that lens, the Court cited the temporary loss of official authority, with no categorical loss of pay,[4] and the procedural guardrail within OCGA § 45-5-6(i), protecting a suspended official from "prosecutorial foot-dragging" by terminating the suspension and restoring official authority if the official is not promptly tried. Id. "Even more important" to the Court, however, was the procedural protection of the indictment itself, "as the triggering device," that depended on a properly constituted grand jury finding that probable cause existed to believe the official had committed a felony. Id. Finally, the Court noted that before suspension can occur, the review commission comprised of the official's peers is required to find that the charge relates to and adversely affects the administration of the office and that the rights and interests of the public are adversely affected thereby. See id. All of these considerations — as measured against the "lesser standard of procedural due process

---

[4] Under the version of OCGA § 45-5-6 in effect at the time of the Court's decision in *Eaves*, the public official continued to receive compensation from his or her public office "until initial conviction by the trial court." See Ga. L. 1986, p. 602, § 2. The General Assembly amended the statute, effective 2022, to provide that suspension is without pay and that if the official is reinstated, he or she shall be entitled to any compensation withheld under the statute; for purposes of "back compensation only," the statute provides that "reinstatement may occur after the expiration of the public official's term of office." Ga. L. 2022, Act 869, § 1. Thus, where final disposition of the criminal case does not result in conviction, under OCGA § 45-5-6(c), the suspension concludes and the official is entitled to back compensation, even if the official's term of office expired while the criminal case was pending.

required" given the temporary nature of the suspension — led the Court to conclude that "the statute affords adequate due process protection to the public official pending resolution of the indictment." Id. at 4–5(2)(b).[5]

With respect to equal protection, the decision in *Eaves* suggests that Eaves claimed he was being treated differently than other elected officials in violation of his equal protection rights. See id. at 5(4). However, the Court determined that the state had "a rational basis for treating those public officials laboring under a felony indictment as a separate class[,]" and consequently found no violation of equal protection. Id.

### 3. *Banes' and Lindsey's Statutory and Constitutional Challenges*

Here, Banes and Lindsey claim that the trial court erred in construing OCGA § 45-5-6 to authorize a first or second suspension based on an indictment returned before the public official's term of office began and in a manner they contend violates the separation of powers. They also argue that the trial court erred in rejecting their

---

[5] The Court also rejected Eaves' claim that the Governor's discretionary authority under the statute deprived him of due process and violated separation of powers. The Court recognized that the Governor's authority was adequately constrained in a manner that satisfied due process by "the requirement that a body largely composed of the public official's peers find his suspension warranted." *Eaves*, 258 Ga. at 5(2)(c). The Court further found that the Governor's authority and discretion under the statute did not amount to "an improper delegation of the power to legislate" to the executive branch. See id. at 5(3).

9

due process and equal protection challenges under the federal and Georgia constitutions. These questions — the trial court's interpretation of OCGA § 45-5-6 and its holdings regarding the statute's constitutionality — are questions of law that we review de novo. See *Lue v. Eady*, 297 Ga. 321, 326(2)(a) (773 SE2d 679) (2015) ("The interpretation of statutes … presents a question of law for the court."); *Rhodes v. State*, 283 Ga. 361, 362 (659 SE2d 370) (2008) ("The constitutionality of a statute presents a question of law.").

a. *Scope of Suspension Authority Under OCGA § 45-5-6*

Banes and Lindsey argue that the trial court erred in construing OCGA § 45-5-6 "to authorize suspensions based on indictments returned before the current term or before the official assumed office," and "to authorize serial suspensions based upon the same pre-election indictment after the prior-term suspension" expired. They further argue that the trial court's interpretation of the statute violates constitutional separation of powers by permitting the Governor to disqualify individuals from seeking or holding office when the qualifications and eligibility for such has been determined otherwise by the legislature. We disagree.

We begin by acknowledging the important rules of construction that guide our interpretation of OCGA § 45-5-6. As we discern its meaning, we presume that "the General Assembly meant what it said and said what it meant. To that end, we must

10

afford the statutory text its plain and ordinary meaning, and we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way[.]" *Deal v. Coleman*, 294 Ga. 170, 172(1)(a) (751 SE2d 337) (2013) (citation modified). "We also must seek to effectuate the intent of the Georgia legislature[,]" such that "in construing language in any one part of a statute," we must "consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole." *Lyman v. Cellchem Int'l*, 300 Ga. 475, 477 (796 SE2d 255) (2017) (punctuation omitted). And where the "statutory language is clear and does not lead to an unreasonable or absurd result, it is the sole evidence of the ultimate legislative intent." *Lumpkin County v. Ga. Insurers Insolvency Pool*, 292 Ga. 76, 78(2) (734 SE2d 880) (2012) (citation modified). See also *S. States Chem. v. Tampa Tank & Welding*, 316 Ga. 701, 714(2) (888 SE2d 553) (2023) ("It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." (citation modified)).

Here, the plain language of the statute mandates suspension of an official upon a felony indictment by a state or federal grand jury and a determination by the review commission that the indictment "relates to and adversely affects the administration *of the office* of the indicted official and that the rights and interests of the public are

11

adversely affected thereby." See OCGA § 45-5-6(b) and (c) (emphasis supplied). Under the straightforward language of the statute, it matters not when the conduct at the heart of the indictment occurred — whether before or after election or re-election — in order to authorize suspension; so long as the conduct relates to and adversely affects the administration of the office that the indicted official now holds, the statute authorizes the Governor to suspend the official. Nor does it matter, according to the plain language of the statute and the legislative intent it evinces, that Banes' prior suspension had terminated due to expiration of his previous term of office. Here, both the indictment itself and the recommendations underlying Banes' and Lindsey's suspensions demonstrate that their alleged unlawful conduct was carried out by virtue of and in dispensation with the administration of the office of a member of the Newton County Board of Commissioners and that commission's representation on the JDA. Both Banes' and Lindsey's alleged conspiracy to commit, and participation in, money laundering directly related to and adversely affected the administration of the Commission offices they held and the public interest. As such, when both assumed office on January 1, 2025, OCGA § 45-5-6 authorized their suspensions, pending final disposition of their criminal cases or expiration of their terms of office. See OCGA § 45-5-6(c).

Notwithstanding the plain language of the statute, Banes and Lindsey argue that this reading of the statute somehow nullifies or renders meaningless two other provisions within the statute. More specifically, they first argue that this interpretation nullifies the sentence in subsection (c) providing that reinstatement to office shall occur if certain dispositions[6] of the criminal proceeding happen "[d]uring the term of office to which such officer was elected and in which the indictment occurred[.]" However, by its plain terms and as the trial court correctly held, the provision relates only to reinstatement on the occurrence of specified events. It does not establish limits on otherwise prescribed suspension authority, and there is nothing inconsistent between the scope of the statute's suspension authority and this "reinstatement" provision. Appellants' argument otherwise is without merit.

They similarly argue that a second suspension of Banes based on the same indictment upon which his first suspension was predicated renders meaningless subsection (c)'s broad and fundamental provision that a suspension is effective "pending the final disposition of the case or until expiration of [the public official's] term of office, whichever occurs first." See OCGA § 45-5-6(c). This argument is

---

[6] The particular dispositions that trigger application of this "reinstatement" sentence are "if a nolle prosequi is entered, if the public official is acquitted, or if after conviction the conviction is later overturned as a result of any direct appeal or application for a writ of certiorari." OCGA § 45-5-6(c).

13

belied by the facts and is likewise without merit. Banes' first suspension terminated at the conclusion of his then-existing term of office on December 31, 2024. His subsequent term began January 1, 2025, and he was not suspended until March 7, 2025; he held public office in the intervening time period. There is nothing about his second suspension that rendered meaningless the statute's directive that his first suspension terminated at the expiration of his preceding term of office.

We thus conclude, as the trial court correctly did, that Banes' and Lindsey's proposed reading of the statute — one in which the state's ability to safeguard its compelling interest in protecting the public interest and ensuring the public's confidence in government is dependent on the vagaries of when an indictment (that has been determined to relate to and adversely affect the administration of the office) may fall within an election cycle — would lead to "an unreasonable and absurd result." We decline to adopt an interpretation of the statute that would allow such an absurd and arbitrary result, in contravention of clear legislative intent as evidenced by the plain language of the statute. See *S. States Chem.*, 316 Ga. at 714(2).

In a related textual argument, Banes and Lindsey claim that because the legislature, under OCGA §§ 45-2-1 and 21-2-8, has "exhaustively delineated who may not qualify to seek or hold county office, namely, persons finally convicted and sentenced of a felony involving moral turpitude or certain election offenses," the trial

court's interpretation of OCGA § 45-5-6 that sanctioned disqualification of "a mere indicted candidate" violated constitutional separation of powers. We disagree.

First, as the trial court appropriately concluded, because OCGA § 45-5-6 provides only for suspension pending final disposition of felony criminal cases involving administration of the office of the public official or expiration of the official's term of office, and the statute does not declare ineligibility or effectuate removal from office, "statutory qualifications to run or hold office are not implicated," and appellants' separation of powers argument is unpersuasive. Moreover, in enacting OCGA § 45-5-6, the General Assembly was well within its constitutional purview to establish other qualifications for office. See Ga. Const. Art. II, Sec. II, Para. III. See also *Eaves*, 258 Ga. at 5–6(3) and (5) (rejecting arguments that OCGA § 45-5-6 represented an improper delegation of the power to legislate and was pre-empted by constitutional provisions disqualifying certain persons for public office). Appellants' claim that the statute violates constitutional separation of powers is thus without merit.

b. *Constitutional Challenges*

Banes and Lindsey claim that the trial court erred in concluding that the Supreme Court's decision in *Eaves* foreclosed their due process and equal protection challenges to OCGA § 45-5-6, and further claim that the statute deprives them of

their due process and equal protection rights under the federal and state constitutions. Based upon the rationale set forth in *Eaves* and application of the familiar rational basis test, we disagree that the statute violates either due process or equal protection under the federal or state constitutions.[7]

In addition to the direction *Eaves* provides, we are guided in our determination of whether OCGA § 45-5-6 comports with due process and equal protection by long-standing canons of construction. We must recognize that "[d]uly enacted statutes enjoy a presumption of constitutionality, and the party challenging the statute bears the burden to show that the statute manifestly infringes upon a constitutional provision[.]" *Williams v. Regency Hosp. Co., LLC*, 322 Ga. 452, 455(2) (920 SE2d 131) (2025) (punctuation omitted). Moreover, "[u]nder the canon of constitutional doubt, if a statute is susceptible of more than one meaning, one of which is constitutional and the other not, we interpret the statute as being consistent with the Constitution." *Sons of Confederate Veterans v. Henry County Bd. of Commrs.*, 315 Ga. 39, 64(2)(d) (880 SE2d 168) (2022).

---

[7] We generally have treated due process and equal protection rights under our state and federal constitutions as coextensive and evaluated challenges under each constitution together. See, e.g., *State v. Holland*, 308 Ga. 412, 413 n.3 (841 SE2d 723) (2020). We do so here, as neither appellants nor the State argues that either of the state constitutional provisions at issue is substantively different from the parallel federal provisions.

16

Furthermore, where — as here — a statute does not proceed along suspect lines or infringe upon fundamental constitutional rights, "equal protection and due process concerns are satisfied if the statute bears a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory." See *State v. Holland*, 308 Ga. 412, 414(1) (841 SE2d 723) (2020) (punctuation omitted). See also *Williams*, 322 Ga. at 455(2) (statutory classification not implicating a suspect class or fundamental rights "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification" (punctuation omitted)). Thus, the questions before us are whether Banes and Lindsey have met their burden of showing: (1) that their suspensions under OCGA § 45-5-6 are not rationally related to the General Assembly's objective of protecting the public's rights, interests, and confidence in government, see *Williams*, 322 Ga. at 455(2); *Eaves*, 258 Ga. at 3(2)(a); OCGA § 45-5-6(c); and (2) that there is no rational basis for the alleged different treatment they maintain they are afforded under the statute, see *Holland*, 308 Ga. at 415–16(2).

### i. *Due Process*

With respect to due process, we conclude that the trial court correctly applied the rationale of *Eaves* in determining that Banes' and Lindsey's March 2025 suspensions are of limited duration and therefore do not deprive them of due process.

As a beginning point, we reiterate the Supreme Court's bedrock holding in *Eaves* that OCGA § 45-5-6 "is not unfair; it bears a rational relationship to a compelling state interest—that of insuring the public's confidence in government." *Eaves*, 258 Ga. at 3(2)(a). In light of subsection (c)'s provision that Banes' and Linsdey's suspensions exist only until final disposition of their cases or expiration of their terms of office, their suspensions are, in fact, temporary and of "limited duration." Id. (explaining that a public employee's suspension "pending disposition of the criminal charges thus safeguards the public interest by removing the employee from a position where he or she might repeat the alleged misconduct and thereby impede the lawful functioning of the [public office] and destroy public confidence in the [public office]").[8] Additionally, while the statute now provides for back compensation rather

---

[8] We recognize that in an inapposite footnote, the *Eaves* decision referenced OCGA § 45-5-6(i) — a subsection not applicable to public officials who are the subject of a federal indictment, *Hill v. Kemp*, 366 Ga. App. 19, 23–25(1) (880 SE2d 590) (2022) (holding that for purposes of mandamus, subsection (i) related to "term of court" did not confer a clear legal right on an official indicted on federal charges) — as support for the temporary nature of the suspension. See *Eaves*, 258 Ga. at 3(2)(a) n.1 (also incorrectly referring to subsection (i) as "OCGA § 45-5-6(d)(2), (i)"). That reference by the Court does not affect the plain language of subsection (c) establishing that the suspension is temporary, lasting only through final disposition of the criminal case or expiration of the term of office. Nor do we find that the content of subsection (i) was essential to the Court's holding that OCGA § 45-5-6 does not deprive a public official under federal indictment of his or her right to procedural due process.

than a suspension with pay, so long as an indicted official is not convicted, he or she will not suffer a loss of compensation following final disposition of the criminal case. See OCGA § 45-5-6(c).[9] Thus, OCGA § 45-5-6 "intrude[s] upon the constitutional rights" of Banes and Lindsey "only so far as is minimally necessary to maintain the public objective[,]" and thus comports with due process. *Eaves*, 258 Ga. at 3(2)(a).[10]

---

[9] Specifically, the subsection provides: "If the public official is reinstated to office, he or she shall be entitled to receive any compensation withheld … . For the purpose of back compensation only, reinstatement may occur after the expiration of the … term of office." We decline to interpret this subsection in a manner that limits the bases for "reinstatement" to the non-exhaustive and temporally-limited list of events set out in the preceding sentence (e.g., "if a nolle prosequi is entered, if the public official is acquitted") and to subsection (i) (providing that if a state indictee "is not first tried at the next regular or special term following the indictment, the suspension shall be terminated and the public official shall be reinstated"). Indeed, there are other events that necessarily would result in termination of a suspension and a concomitant re-occupation of the office, such as an acquittal that occurred during a term of office that began after the indictment had been returned (that is, assuming no superseding indictment had been returned during the term of office). See *Eaves*, 258 Ga. at 3–4(2)(a) ("If the matter is resolved favorably to the official, he is fully restored to his former status." (citing OCGA § 45-5-6 (c)). Moreover, we find that a suspension without pay and provisions for back compensation are rationally related to the State's compelling interest in ensuring the public's confidence in government.

[10] To the extent the Court in *Eaves* also cited the utility of the indictment itself and, to a lesser degree, subsection (i)'s protection against "prosecutorial foot-dragging," and the review commission's required finding that the criminal charge "affect … job performance" in its procedural due process analysis, again, we do not find that the protection afforded by subsection (i) was essential to the Court's holding on the issue and its inapplicability to federal indictees does not strip the statute of its rational basis. Moreover, as we discuss, infra, the Speedy Trial Act, 18 USC § 3161, provides the same or greater temporal protection to federal indictees.

## ii. *Equal Protection*

Banes and Lindsey argue OCGA § 45-5-6 deprives them of equal protection because reinstatement under OCGA § 45-5-6(i), which is applicable to officials under state indictment, "denies [the] federally indicted official any statutory avenue to reinstatement." That is, they argue that because subsection (i) provides for reinstatement if a suspended official, with certain exceptions, "is not first tried at the next regular or special term" and federal courts do not have defined terms of court, federal indictees have no path to reinstatement. We disagree that the presence of subsection (i) without a corresponding subsection applicable to officials under federal indictment violates equal protection because there are reasonably conceivable facts providing a rational basis for the distinction.

Here, the facts providing that rational basis are found both in the plain language of the statute itself and in the federal Speedy Trial Act, 18 USC § 3161 et seq. First, as the trial court correctly noted, under subsection (c), any suspension — whether based on a federal or state indictment — expires upon final disposition of the criminal case and thus, the official is no longer suspended from his or her office.

Secondly, again as the trial court properly observed, federal criminal cases are subject to the Speedy Trial Act, which requires that a charged individual's trial commence within 70 days of the date of the indictment, with certain periods being

excluded from the computation of those 70 days. See 18 USC § 3161(c)(1) and (h). If the federal indictee is not brought to trial within the time prescribed, the indictment "shall be dismissed on motion of the defendant[,]" and such dismissal may be with prejudice (at which time an indicted official's suspension from office would expire, by operation of OCGA § 45-5-6(c)). See 18 USC § 3162(a)(2). State criminal cases, on the other hand, are subject to "terms of court" of varying lengths, depending on the judicial circuit and/or county in which the case is pending. See, e.g., OCGA § 15-6-3(3) and (4)(a) (identifying terms of court of varying lengths of time, from approximately two months to seven-and-one-half months). We thus conclude that the copious variations in superior court terms of court, the more straightforward and self-executing constraints of the Speedy Trial Act, and the similar policy-based protection (against being slow-walked by the prosecution) that both the Speedy Trial Act and subsection (i) provide, more than establish a rational basis for the statute's differentiation between officials indicted in state court and those indicted in federal court. We therefore hold that the statute does not violate Banes' or Lindsey's equal protection rights.[11]

---

[11] We also agree with the trial court's supplemental holding that because Banes and Lindsey requested and received extensions of time in their federal criminal cases that far exceeded both the 70-day limit within the Speedy Trial Act and what would have been an applicable or comparable term of court had they been indicted in state court, the facts of their case placed them beyond the potential reinstatement period

21

4. In light of our holdings above, we need not address Banes' and Lindsey's contention that the trial court erred in concluding that the discretionary petition for review permitted under OCGA § 45-5-6(f) "cures constitutional defects."

5. We note that in their reply brief, Banes and Lindsey make arguments neither enumerated as error nor argued in their opening brief. As such, we do not consider those arguments. See *Perez v. Atlanta Check Cashers*, 302 Ga. App. 864, 867 n.3 (692 SE2d 670) (2010) (explaining that party may not use reply brief to expand enumerations of error).

In closing, based on the foregoing, we hold that OCGA § 45-5-6 authorized the Governor to suspend Banes and Lindsey in March 2025 based upon their federal indictment, and that those suspensions did not violate either individual's due process or equal protection rights under the federal or Georgia constitutions.

*Judgment affirmed. McFadden, P. J., and Watkins, J., concur.*

---

of subsection (i) and they thus lacked standing to assert an equal protection claim on the unavailability of subsection (i).